

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2004

# Hubbard v. Pinchak

Precedential or Non-Precedential: Precedential

Docket No. 00-5150

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Hubbard v. Pinchak" (2004). *2004 Decisions*. Paper 379.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/379

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

———

No. 00-5150

———

FRANK HUBBARD,
                              Appellant

v.

STEVEN PINCHAK; THE ATTORNEY
GENERAL OF THE STATE OF NEW
JERSEY; PETER VERNIERO

———

On Appeal from the United States
District Court for the District of New
Jersey
(D.C. Civil No. 97-cv-03717)
District Judge:  Hon. Jerome B. Simandle

———

Argued May 5, 2004

Before:  SLOVITER and FUENTES,
Circuit Judges, and POLLAK, District
Judge[*]

(Filed: August 5, 2004)

———

[*]    Hon. Louis H. Pollak, Senior
Judge, United States District Court for
the Eastern District of Pennsylvania,
sitting by designation.

Mary Gibbons        (Argued)
Toms River, New Jersey 08757

        Attorney for Appellant

Peter C. Harvey
        Attorney General of New Jersey
Trenton, New Jersey 08625

Linda K. Danielson  (Argued)
        Deputy Attorney General
        Of Counsel and on Brief
Division of Criminal Justice
Appellate Bureau
Trenton, New Jersey 08625

        Attorneys for Appellees

———

OPINION OF THE COURT

SLOVITER, Circuit Judge.

        Petitioner Frank M. Hubbard seeks
a writ of habeas corpus pursuant to 28
U.S.C. § 2254.  He procedurally defaulted
his claims in the state courts.  He seeks to
overcome the procedural default by
asserting his "actual innocence," Bousley
v. United States, 523 U.S. 614, 623
(1998); Schlup v. Delo, 513 U.S. 298, 327
(1995), a claim that the District Court
rejected.  We must therefore examine the
scope and contours of the claim of actual
innocence as a gateway to consideration of
the merits of petitioner's habeas claim
notwithstanding the procedural default.

## FACTS

On June 22, 1981 in Camden, New Jersey, David O'Neal[1] was killed by a gunshot wound to the face. Thereafter, the State of New Jersey indicted Hubbard on six felony counts, including murder, robbery, conspiracy to commit robbery, and firearms violations. Hubbard pled not guilty to all counts. Also charged as defendants were John Monroe, who entered a guilty plea in exchange for a thirty-year sentence, and Stanley Banks, who was a fugitive at the time of trial.

Monroe testified at trial to the details of the crimes pursuant to a plea agreement with the prosecutor. He stated that he, Hubbard, and Banks met at his residence where they discussed robbing O'Neal, that he assumed Hubbard had a gun because he observed a bulge in Hubbard's front, that Hubbard showed him a gold watch to sell to O'Neal, and that, at Hubbard's direction, Banks drove to O'Neal's. When they arrived, Hubbard handed O'Neal the gold watch, pulled his revolver and, when O'Neal reached for his own gun, Hubbard shot O'Neal in his face. Hubbard and Banks returned to their vehicle and Monroe ran home.

Lorelie Truluck, Monroe's girlfriend, testified that she, Monroe, Hubbard, and Banks drove to O'Neal's place of residence intending to rob him, that the men went into the residence while she remained in the vehicle and did not witness anything related to their entry, but that she saw Hubbard and Banks run back to the vehicle, and that Hubbard instructed someone to drive and wrapped the gun in a towel. Truluck's account was consistent with Monroe's subsequent testimony.

Gary Hammon, the lone eyewitness who was not involved in the incident, also testified. Hammon lived "[r]ight across from" O'Neal and although he did not see the shooting itself, he testified that there were three perpetrators involved, all of whom he saw conversing with each other, and two of whom he saw knock on O'Neal's door. Hammon testified that all the men were black, and that there was a shorter man who was "[f]ive foot something" and a taller man who was "six foot something" or "six foot two." Trial Tr. at 14-15 (Apr. 22, 1982). Hammon testified that when O'Neal opened the door, one of the two men shot him. All three men fled without entering O'Neal's residence. He did not get a good look at any of their faces.

The jury found Hubbard guilty of felony murder and robbery, and not guilty of the handgun possession charges. On July 6, 1982, the state court sentenced Hubbard to life imprisonment with a 25-year parole ineligibility on the felony murder charge, and a 20-year concurrent term on the robbery count.

---

[1]  The victim's name appears throughout the record as either "O'Neal" or "O'Neil." We will conform to the District Court's spelling and use "O'Neal" herein.

There was no testimony linking any gun, putatively the murder weapon, to Hubbard and no forensic evidence linking him to the victim or the scene of the crime. Hubbard had filed a Bill of Alibi Particulars before the grand jury charged him in which he stated he was in Atlantic City, New Jersey on the night of the crime, which took place in Camden, New Jersey.

## PROCEDURAL HISTORY

This matter has traveled up and down the state courts of New Jersey, and it is unnecessary to recount the full details here. We will limit the facts to the proceedings necessary to decide this appeal from the District Court's order denying Hubbard's petition for a writ of habeas corpus. Hubbard filed two separate petitions for post-conviction relief (PCR) in the state courts – the first in August 1988, and the second in May 1994. Both were dismissed as untimely, and therefore were procedurally barred by New Jersey state law. Although the Appellate Division of the New Jersey Superior Court agreed that the claims raised in Hubbard's second PCR petition were time barred, it nevertheless stated that it "carefully reviewed each of the seven [claims] and [is] satisfied that there is no basis to grant [Hubbard] relief." App.II at 209.

On July 28, 1997, Hubbard filed a pro se petition for habeas corpus relief in the District Court, raising seven claims that he had set forth in his second PCR petition. They are:

(1) that the indictment against him was based on the perjurious testimony of the arresting detective before the grand jury; (2) that his sentence does not comply with New Jersey sentencing criteria; (3) that the trial court improperly deprived him of his right to cross-examine one of the state's witnesses; (4) that the police violated his Fifth Amendment right to counsel by ignoring his request for an attorney during custodial interrogation; (5) that the trial court gave a prejudicial supplemental jury instruction on the law of accomplices; (6) that the trial court improperly admitted certain photographs into evidence; and (7) that his trial counsel provided ineffective assistance.

App.I at 3.

The District Court dismissed two of the grounds raised by Hubbard for substantive reasons and they are not at issue in this appeal. The District Court denied the requested writ of habeas corpus on the five other claims because of Hubbard's procedural default, stating, "Petitioner has not argued that he is innocent of the crime for which the jury convicted him," App.I at 10, and

3

concluded, "Not having shown cause for his procedural default below or actual innocence of the crimes for which he was convicted, Grounds One, Three, Four, Six and Seven of petitioner's habeas corpus petition are not cognizable in this court." App.I at 11.

Hubbard then filed a pro se motion of reconsideration of the District Court's denial of habeas relief. In response to this motion, the District Court held that although the motion for reconsideration was timely filed,

> [Petitioner] does not raise any factual or legal point overlooked by this Court. Petitioner challenges this Court's statement that he did not raise actual innocence as an issue in his petition, but offers no evidence that he did raise such an issue without procedural default, and also offers no evidence that he is actually innocent for the charges he is presently incarcerated for. Mr. Hubbard's petition was denied on [the five relevant grounds] due to procedural default, so even if he had demonstrated some issue of actual innocence here, it would not have changed this Court's earlier denial of his application.

App.I at 26 (emphasis added).

We issued a certificate of appealability on the issue "whether the District Court properly rejected Appellant's attempt to overcome the procedural default of claims #1, #3, #4, #6 and #7 by asserting his 'actual innocence.'" Appellant's Br. at 2. We have jurisdiction to review the denial of the habeas writ under 28 U.S.C. §§ 1291 & 2253.

**DISCUSSION**

**I.**

The State contends that Hubbard's allegation of actual innocence is not properly before this court because it appeared "[f]or the first time in his motion for reconsideration of the [D]istrict [C]ourt's opinion." Appellee's Br. at 15.[2]

Hubbard's motion for reconsideration as well as his habeas petition were filed pro se. We have previously stated that a petitioner's

---

[2] At oral argument the State conceded, "The whole issue of timing is an academic issue because in the first instance, there is no viable claim of actual innocence," and that if such a viable claim were made even in a motion for reconsideration, in the interest of justice the District Court would have had to address it. Tape of Oral Argument (May 5, 2004).

4

failure to specifically articulate his claim as one of "actual innocence" should not preclude review of the merits of his claim. [The petitioner] clearly argued that the government could not satisfy the factual prerequisites of a . . . conviction. When properly viewed through the more forgiving lens used to construe pro se habeas petitions, we conclude that the claim of "actual innocence" was properly before the District Court.

United States v. Garth, 188 F.3d 99, 108 (3d Cir. 1999).

This case presents a similar situation. Among the grounds Hubbard raised in his habeas petition were "ineffective trial counsel" who "did nothing in [his] defense" and that the "whole trial was a mockery." App.II at 5. In response to the State's claim of the procedural bars, Hubbard stated that "[f]ederal review is necessary to prevent a fundamental miscarriage of justice," and that there was "a reasonable probability" that but for counsel's unprofessional errors "the results of the proceedings would have been different." Supp. App. at 125, 127.

When viewed through a "more forgiving lens" that does not require petitioners to "specifically articulate" claims of actual innocence, Garth, 188

F.3d at 108, this language in the pro se petition and traverse was sufficient to preserve Hubbard's actual innocence claim. In fact, he pled not guilty, and he filed a Bill of Alibi Particulars placing him in Atlantic City at the moment of the crime, which occurred in Camden. We therefore reject the State's argument that Hubbard's claim of actual innocence is not properly before us.

## II.

As the Supreme Court reiterated this past term, a federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus "[o]ut of respect for finality, comity, and the orderly administration of justice." Dretke v. Haley, 124 S. Ct. 1847, 1849 (2004). This is a reflection of the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." Id. at 1852; see Wainwright v. Sykes, 433 U.S. 72, 81 (1977). The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review. Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002). An allegation of "actual innocence," if credible, is one such "miscarriage of justice" that enables courts to hear the merits of the habeas claims.

5

The petitioner in Schlup v. Delo, 513 U.S. 298 (1995), the leading case on the "actual innocence" doctrine, had made both an assertion of constitutional error at trial and a claim of innocence. The Supreme Court stated that because of the assertion of constitutional error, his conviction was not "entitled to the same degree of respect as one. . . that is the product of an error free trial." Id. at 316. The Court continued,

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

Id. Hubbard relies on this precedent as the basis for us to "pass through the gateway" to the merits of his habeas claims. As we explained in our decision in Cristin, 281 F.3d at 412, a "fundamental miscarriage of justice" will remove the bar on claims that have been procedurally defaulted, and actual innocence will show such a fundamental miscarriage of justice.

Because the cause and prejudice exception to the procedural bar for defaulted claims is itself based on equitable considerations, the Supreme Court has made clear that the actual innocence exception to the unreviewability of procedurally defaulted claims should be applied only in the rarest of cases. See Dretke, 124 S. Ct. at 1852. As it explained in Dretke:

> [I]t is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary. To hold otherwise would be to license district courts to riddle the cause and prejudice standard with ad hoc exceptions whenever they perceive an error to be "clear" or departure from the rules expedient. Such an approach, not the rule of restraint adopted here, would have the unhappy effect of prolonging the pendency of federal habeas applications as each new exception is tested in the

6

courts of appeals.

Id. at 1853.

In Dretke, the Court, applying the restraint that it cautioned for the lower courts, declined to decide the issue that had divided the courts of appeals – whether to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. Instead, it avoided the issue by holding that "a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 1852. We see no ground for avoidance that was available to the District Court in this case.[3] It therefore met head on, and

---

[3] The Appellate Division of the New Jersey Superior Court stated that in addition to Hubbard's PCR claims being procedurally barred, they provided no basis for relief. Hubbard's counsel urges us to consider this ruling to be an "alternative ruling" that we can review despite the procedural default ruling. Appellant's Br. at 15 n.11. At oral argument, Hubbard's counsel argued that the District Court in this case failed first to consider alternative grounds for relief urged by the respondent, grounds that might obviate any need to reach the actual innocence question, citing Dretke, 124 S. Ct. at 1849.

rejected, Hubbard's allegation of actual innocence as a vehicle to open the gateway

---

There are several reasons the state court's "alternative" ruling does not obviate the need to reach the actual innocence question. First, a state procedural bar functions as an adequate and independent state ground which precludes federal review. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding," as "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."). Second, in Dretke the alternative habeas claim the Supreme Court referred to was an ineffective assistance of counsel claim that had not been procedurally barred. Should the petitioner in Dretke have prevailed on this habeas claim, the actual innocence question regarding the procedurally defaulted claims could have been avoided. In the instant case, all habeas claims on appeal have been procedurally defaulted. Third, Hubbard acknowledges that "the issue of procedural default, vel non, lies outside the scope of the certificate of appealability issued here." Appellant's Br. at 15 n.11. For these reasons, we decline to view the state court's comment regarding the merits as a basis on which we can avoid the actual innocence question.

to review of his procedurally defaulted claims. We conclude that we are required to do the same.[4]

## III.

A petitioner who is asserting his "actual innocence of the underlying crime . . . must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 327). In Schlup, the Supreme Court stated that claims of actual innocence are rarely successful because the necessary evidence is unavailable in the vast majority of cases. 513 U.S. at 324. The Court explained that petitioner must support his allegations of constitutional error with

> new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

Id. We must therefore consider both whether Hubbard has presented "new reliable evidence . . . not presented at

---

[4]    We exercise plenary review over the District Court's legal conclusion and review its findings of fact for clear error. Cristin, 281 F.3d at 409.

trial," and, if so, whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.

The only evidence that Hubbard asserts is "new" is what he terms as "his own sworn testimony." Appellant's Br. at 18. Hubbard did include in his Bill of Alibi Particulars, which he filed as a matter of record before indictment, a statement that places him too far from the city where the crime was committed to have participated in it. However, Hubbard did not give this testimony during the trial even though he was available to do so. Counsel does not suggest that this piece of evidence was excluded from the record before the jury that convicted Hubbard. A defendant's own late-proffered testimony is not "new" because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway.

In Glass v. Vaughn, 65 F.3d 13 (3d Cir. 1995), petitioner, who was convicted of first degree murder notwithstanding his alibi that he was not even at the scene when the killing occurred, sought to overcome his procedural default of his post traumatic stress disorder by claiming actual innocence. Citing Schlup, we rejected the actual innocence claim, concluding that petitioner had not shown that it is more likely than not that no rational juror would have voted to convict him in light of the evidence that he went to the murder scene armed and had earlier behaved violently to the victim.

Hubbard's proffered testimony fails to change or clarify the facts presented at trial. At trial the strongest evidence against Hubbard was the testimony of Monroe and Truluck, his accomplices who were there when O'Neal was shot, and the evidence of Hammon, albeit not specific as to Hubbard's identity. Mr. Wilson, Hubbard's uncle, testified as a State witness that Hubbard called him three weeks after the incident to tell him he "was involved in a murder trial that he didn't commit." Trial Tr. at 83 (Apr. 28, 1982). Hubbard's trial counsel informed the trial court that he would not call "Mr. Wilson as a witness to support [Hubbard's] alibi defense." Supp. App. at 11.

Hubbard called no witnesses. Hubbard's defense was presented primarily by his trial counsel's summation to the jury, which stated, "Our whole position throughout this case is we weren't there, weren't there when it happened so as a result we can't be guilty." Trial Tr. at 134 (Apr. 29, 1982). He referred to several other pieces of evidence from which the jury could have inferred that Hubbard was not at the scene of the crime, such as Hubbard's denial of the indictment and any involvement in the crime, the height difference between Hubbard (who is 5'9") and the perpetrator who Hammon testified was 6' or 6'2", the lack of fingerprints, and the unexamined handprint on the storm door of O'Neal's house. In a sworn statement supporting his habeas petition, Hubbard essentially alleges the same facts, raising questions such as

"[W]hat part I took in this crime? Was I at the scene, around the corner? Was I in another city?" App.II at 9. As this information is not new, it cannot qualify as the kind of new evidence contemplated by the Supreme Court, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Schlup, 513 U.S. at 324.

Hubbard's counsel attempts to show Hubbard's claim of actual innocence is reliable because "[a]part from the testimony of Monroe and Truluck – rejected by the jury – there is no evidence of his guilt of the murder charge. Given the absence of any evidence in support of his guilt under a felony-murder theory, the record is barren of any inconsistency with the actual innocence claim that he now timely puts forward." Appellant's Br. at 18. We find this argument unpersuasive.

There is no basis for Hubbard's statement that the jury rejected the testimony of Monroe and Truluck. Although the jury acquitted Hubbard of the weapons charge – testified to by Monroe and Truluck – it convicted him on the robbery and murder charges, which were also testified to by Monroe and Truluck. To the extent that the jury conviction suggests anything, it suggests that it believed part and disbelieved part of their testimony. However, it is wholly inappropriate for this court to glean from the bare fact of a partial conviction that certain witnesses' testimony is not to be believed. Further, the lack of forensic evidence linking Hubbard to the crime

9

does not bolster the credibility of Hubbard's claim of innocence because it was this same record that the jury reviewed en route to convicting him.

The "new" evidence Hubbard puts forth in alleging actual innocence is nothing more than a repackaging of the record as presented at trial. Therefore he cannot logically meet the more likely than not "that no rational juror would have voted to convict" standard. See Glass, 65 F.3d at 17. To allow Hubbard's own testimony that he proffers (supported by no new evidence) to open the gateway to federal review of claims that have been procedurally defaulted under state law would set the bar for "actual innocence" claimants so low that virtually every such claimant would pass through it. This would stand in stark contrast to the caveat of the Supreme Court to exercise restraint and require a "strong showing of actual innocence," and its observation that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." Calderon, 523 U.S. at 558-59 (internal quotation marks and citation omitted). We thus conclude that Hubbard's allegation of actual innocence is insufficient to allow review of his defaulted claims.

Having so decided, we agree with the District Court's January 31, 2000 opinion that "[n]ot having shown cause for his procedural default below or actual innocence of the crimes for which he was convicted, [the procedurally defaulted claims] of petitioner's habeas corpus petition are not cognizable in this court." App.I at 11.[5]

[5] Some of the language in the District Court's June 14, 2002 opinion regarding Hubbard's motion for reconsideration is troubling. The Court stated:

> Petitioner challenges this Court's statement that he did not raise actual innocence as an issue in his petition, but offers no evidence that he did raise such an issue without procedural default, and also offers no evidence that he is actually innocent for the charges he is presently incarcerated for. Mr. Hubbard's petition was denied on [some of his claims] due to procedural default, so even if he had demonstrated some issue of actual innocence here, it would not have changed this Court's earlier denial of his application.

App.I at 26. This seems to be a clear misapprehension of the law, although during oral argument counsel for the state urged this court to view it as a "poor choice of words." If Hubbard had demonstrated some "issue of actual innocence," the District Court would

**CONCLUSION**

For the reasons set forth above, we will affirm the decision of the District Court that it was foreclosed from reviewing the procedurally defaulted claims on the ground that the allegation of actual innocence is insufficiently strong to overcome the "State's interests in actual finality . . . ." Calderon, 523 U.S. at 557.

---

have been required to consider Hubbard's habeas application differently. However, this statement does not detract from the District Court's denial of the habeas petition on the ground that there was no "coherent argument as to his actual innocence." App.I at 11. Further, the District Court gave no indication in its opinion denying habeas that it misapprehended the "actual innocence" law, and in fact the Court discussed the gateway correctly at some length. App.I at 8-11.