**William D. DOWNES, Jr., Petitioner,**

v.

**Thomas L. CARROLL, Warden, Respondent.**

**No. CIV.A.02–1565–KAJ.**

United States District Court, D. Delaware.

Dec. 7, 2004.

---

William D. Downes, Jr. Pro se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, for Respondent.

### MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Petitioner William D. Downes is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Downes' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 2.) For the reasons that follow, I will dismiss Downes' § 2254 petition as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the night of August 24, 1994, Downes asked William R. Mariner to help him look for Downes' girlfriend. According to Mariner, the two men drove to a trailer owned by Donnie Nichols, where Nichols lived with Samuel Medley and Eddie Anthony. Once there, Downes entered Nichol's trailer and, according to the testimony of Medley, pointed what appeared to be a handgun at Medley. After determining that Medley was alone, Downes exited the trailer. Mariner further testified that, after leaving Nichol's trailer, he drove Downes to the residence of Amy Royal and Harvey Baker, where Downes proceeded to fire several shots from an assault rifle into the home. The bullets missed Baker, but hit Royal.[1]

In February 1995, a Delaware Superior Court jury acquitted Downes of first degree conspiracy, but found him guilty of attempted first degree murder, first degree assault, first degree reckless endangering, first degree burglary, and two

counts of possession of a firearm during the commission of a felony. On March 24, 1995, the Delaware Superior Court sentenced Downes to life plus thirty six years in prison. The Delaware Supreme Court affirmed Downes' convictions and sentences. *See Downes v. State,* 676 A.2d 902, 1996 WL 145836 (Del.1996).

In March 1999, Downes filed in the Delaware Superior Court a motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61. The Superior Court denied the motion, and the Delaware Supreme Court affirmed the denial on appeal. *See Downes v. State,* 771 A.2d 289 (Del.2001).

In October 2002, Downes filed in this Court a form § 2254 petition asserting three claims: (1) he was denied his constitutional right to a fair trial because Mariner, the State's main witness, committed perjury; (2) there was insufficient evidence to sustain a conviction for attempted murder in the first degree; and (3) his trial counsel provided ineffective assistance by failing to investigate the credibility of the State's witnesses. (D.I. 1, at 5–6; D.I. 2.)

The State acknowledges that Downes exhausted state remedies, but asks the Court to dismiss Downes' § 2254 petition as untimely. (D.I.11.) Downes' "Memorandum of Law in Support of Petition for Writ of Habeas Corpus" and his "Response to the State's Answer" assert that the limitations period should be equitably tolled. (D.I. 2, at 2; D.I. 16.)

Downes' § 2254 petition is now ready for review.

## III. DISCUSSION

### A. One–Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was

---

1. This factual background was reproduced from the Delaware Supreme Court's opinion

in *Downes v. State,* 676 A.2d 902 (Del. Supr.1996).

signed into law by the President on April 23, 1996, and habeas petitions filed in federal courts after this date must comply with AEDPA's requirements. *See generally Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Downes' § 2254 petition, dated October 2002, was filed after AEDPA's enactment in 1996. As such, his petition is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh,* 521 U.S. at 336, 117 S.Ct. 2059.

▮ Downes does not allege, nor can I discern, any facts triggering the application of §§ 2244(d)(1)(B) or (C). However, Downes appears to argue that § 2244(d)(1)(D) supplies the relevant starting date for the limitations period. During Downes' trial, Mariner testified that he had picked up his (Mariner's) girlfriend from work, and was with her when Downes paged him and told Mariner to come to his house. Downes asserts that, after his trial, he discovered evidence that this testimony was a lie because Mariner had not been with his girlfriend at all on the day of the crimes. Downes provides five affidavits regarding this alleged perjury, one of which is by Mariner's ex-girlfriend stating that Mariner did not pick her up from work that day because she had not gone to work at all. (D.I. 3, at 9–16.)

A review of Downes' affidavits demonstrates that § 2244(d)(1)(D) does not apply. The dates on the affidavits range from January to June 1998, and are signed by Downes' father, Mariner's former girlfriend, and three other acquaintances. The earliest affidavit, dated January 26, 1998, is from Downes' father, who asserts he learned of Mariner's perjury on December 21, 1995, when Mariner's ex-girlfriend provided nursing care to him and told him that Mariner had lied about picking her up from work.

Downes' appeal was still pending when his father learned about Mariner's perjury. I cannot presume that Downes' relationship with his father was such that his father would immediately inform Downes of this information. However, Downes himself states that "[t]he very fact that petitioner has secured affidavits from these persons, while incarcerated, demonstrates the ease with which [trial] counsel could have obtained this information." (D.I. 2, at 14.) This statement demonstrates that Downes could have discovered the factual predicate of this claim earlier than one of the 1998 dates contained on the affidavits if he had exercised reasonable diligence. I therefore conclude that § 2244(d)(1)(D) does not provide the start

date of the limitations period.[2] (D.I. 2, at 14.)

Accordingly, the one-year period of limitations began to run when Downes' conviction became final under § 2244(d)(1)(A). Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir.1999). Here, the Delaware Supreme Court affirmed Downes' convictions and sentences on March 13, 1996, and his conviction became final ninety days thereafter, on June 11, 1996. *See, e.g., Harris v. Snyder*, 2002 WL 47895 (D.Del. Jan. 11, 2002). Thus, to be timely, Downes had to file his § 2254 petition by June 11, 1997.

A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir.2003); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir.1998). Downes' petition is dated October 6, 2002, and presumably, he could not have delivered it to prison officials for mailing any earlier than that date. Therefore, I adopt

October 6, 2002 as the filing date, *See Woods v. Kearney*, 215 F.Supp.2d 458, 460 (D.Del.2002), which is well past the June 1997 deadline. Thus, Downes' habeas petition is time-barred and should be dismissed, unless the time-period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir.1999). I will discuss each doctrine in turn.

**B. Statutory Tolling**

Section 2244(d)(2) of AEDPA specifically permits the statutory tolling of the one-year period of limitations:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir.1998).

A properly filed state post-conviction motion tolls AEDPA's limitations period during the time a petitioner pursues his state post-conviction remedies, including any post-conviction appeals.[3]

---

**2.** Even if § 2244(d)(1)(D) could apply, Downes' § 2254 petition would still be untimely. Liberally presuming the most recent affidavit (dated June 1, 1998) provides the date on which the factual predicate of the claim was discovered, Downes had until June 1, 1999 to timely file a habeas petition. As such, when Downes filed his Rule 61 motion on March 10, 1999, 282 days of AEDPA's one-year period had already expired. Because the Rule 61 motion would have been filed during the one-year limitations period, it would toll the period up through March 30, 2001, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the

motion. *See infra* pp. 7–8. The limitations clock would begin to run again on March 31, 2001, only to expire in August 2001. Downes did not file his habeas application until October 2002, still more than one-year too late.

**3.** However, the 90–day period during which a state prisoner may file a petition for a writ of certiorari in the United States Supreme Court from the denial of his post-conviction motion does not toll AEDPA's limitations period. *Stokes v. Dist. Att'y of County of Philadelphia*, 247 F.3d 539, 543 (3d Cir.2001).

*Swartz v. Meyers*, 204 F.3d 417, 424–25 (3d Cir.2000). If a timely post-conviction appeal is not filed, then AEDPA's limitations period is only tolled until the time to appeal expires under state law. *Id.* Further, a properly filed state post-conviction motion can only toll the federal habeas limitations period if the post-conviction motion itself is filed within AEDPA's one-year limitations period. *See Price v. Taylor*, 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002); *Gholdson v. Snyder*, 2001 WL 657722, at *3 (D.Del. May 9, 2001).

■ Here, Downes filed a Rule 61 motion for post-conviction relief on March 10, 1999, almost two years after the limitations period had expired. Thus, the statutory tolling provision of § 2244(d)(2) does not render Downes' habeas application timely.

## C. Equitable Tolling

■ It is well-settled that AEDPA's limitations period may be subject to equitable tolling, but federal courts apply this doctrine sparingly. *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616 (3d Cir.1998); *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir.1998); *Thomas v. Snyder*, 2001 WL 1555239, at *3–4 (D.Del. Nov. 28, 2001). The one-year limitations period will be tolled "only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999) (quoting *Midgley*, 142 F.3d at 179).

■ In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere

excusable neglect is insufficient. *Miller*, 145 F.3d at 618–19 (citations omitted); *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir.2004). Consistent with these principles, the Third Circuit has specifically limited equitable tolling of AEDPA's limitations period to the following circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir.1999).

Downes contends that equitable tolling is appropriate because: (1) he was incarcerated in Virginia and did not have access to his legal documents; (2) he had fee disputes with his attorneys, thus, both his trial attorney and his post-conviction counsel purposely failed to turn over trial transcripts and pertinent case files to him; [4] and (3) he is "actually innocent" of the underlying crime. (D.I. 2; D.I. 16.)

■ Equitable tolling is not appropriate in the instant situation, however, because Downes did not diligently pursue his habeas claims. The factual predicate for Downes' claims is that Mariner, the prosecution's main witness, lied about his activities prior to the crimes committed. The earliest dated affidavit submitted by Downes is dated January 26, 1998, and the most recent affidavit is dated June 1, 1998. Yet, Downes waited over a year after obtaining these affidavits before raising the perjury issue in his March 1999 Rule 61 motion. Similarly, even though the Dela-

---

4. I have combined Downes' second and third equitable tolling arguments because of their similarity. *See* D.I. 2.

ware Superior Court denied his Rule 61 motion in August 1999, and the Delaware Supreme Court affirmed this decision in March 2001, Downes again waited over a year and a half before raising this issue in a federal habeas petition, four years after obtaining the affidavits

■ Further, none of Downes' explanations demonstrate that extraordinary circumstances prevented him from timely filing his habeas petition. First, incarceration in another state is not an extraordinary circumstance. *See Bell v. Snyder*, 2002 WL 1446947, at *4 (D. Del. June 4, 2002)(holding that incarceration in another state is not an extraordinary circumstance justifying equitable tolling); *Washington v. Byrd*, 2002 WL 461729, at *7 (E.D.Pa. Mar. 22, 2002).

■ Second, the fact that Downes did not have access to certain legal documents does not, on its own, warrant equitable tolling. *See, e.g., Robinson v. Johnson*, 313 F.3d 128, (3d Cir.2002)(finding that petitioner's claim of deprivation of legal materials did not warrant equitable tolling); *Payne v. Digulielmo*, 2004 WL 868221, at *3 (E.D.Pa. Apr. 21, 2004) ("A petitioner need not have his trial transcript to file a petition for federal habeas relief"). However, by asserting that he was unable to timely obtain files and documents, in part due to his attorneys' alleged willful refusal to turn them over, Downes appears to allege that his attorneys' malfeasance constitutes an extraordinary circumstance.

■ In rare circumstances, sufficiently egregious attorney misconduct may constitute an extraordinary circumstance warranting equitable tolling, but tolling will only be appropriate if the district court determines that the petitioner also exercised "due diligence in pursuing the matter under the specific circumstances he faced." *Schlueter*, 384 F.3d at 77.

■ As an initial matter, Downes' conclusory allegations fail to demonstrate that his attorneys engaged in "egregious misconduct."[5] At most, Downes experienced a delay in obtaining legal documents, and he has not explained how this delay prevented him from filing a timely basic habeas petition. *See, e.g., Brown v. Shannon*, 322 F.3d 768 (3d Cir.), cert. denied, 539 U.S. 948, 123 S.Ct. 2617, 156 L.Ed.2d 637 (2003)(holding that there were no extraordinary circumstances to equitably toll the limitations period even though petitioner's attorney could not obtain the trial transcript, because petitioner could still file a basic habeas petition); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir.2000) (no equitable tolling where petitioner had been denied access to legal materials for six months, but had regained access six months prior to expiration of limitations period). Further, as previously explained, Downes did not diligently pursue his claims. Thus, even if there were egregious misconduct, equitable tolling is not warranted.

5. Downes' trial attorney initially represented Downes during his appeal, but subsequently withdrew and referred him to a public defender. Downes then requested, and obtained, leave to represent himself. Although Downes does not provide dates as to when he requested or obtained the documents, the record indicates that trial counsel probably transferred the documents to the public defender, or to Downes himself when Downes decided to proceed *pro se* without the public defender. (D.I. 15, May 10, 1999 Affidavit of trial counsel in Response to Defendant's Motion for Post–Conviction Relief, at p. 2.)

Another attorney represented Downes during his Rule 61 proceeding and his appeal of the Superior Court's denial of the motion. The Delaware Supreme Court affirmed the denial in March 2001, and the record reveals that that counsel intended to return the trial transcripts to Downes in November or December 2001. (D.I. 3, at A–4.)

■ Finally, Downes' assertion of actual innocence does not trigger the application of the equitable tolling doctrine. Although "an allegation of 'actual innocence,' if credible, is [a] 'miscarriage of justice' that enables courts to hear the merits of [procedurally defaulted] claims," *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004), neither the United States Supreme Court nor the Third Circuit has addressed whether a petitioner's actual innocence qualifies as an exception to AEDPA's statute of limitations. *Morales v. Carroll*, 2004 WL 1043723, at *3 (D.Del. Apr. 28, 2004); *Devine v. Diguglielmo*, 2004 WL 945156, at *3 & n. 4 (E.D.Pa. Apr.30, 2004)(collecting cases). Even if there were an actual innocence exception to AEDPA's limitations period, Downes would have to show that, more likely than not, no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In other words, Downes would have to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Hubbard*, 378 F.3d at 339, 340.

Here, Downes concedes that he presents the affidavits to impeach Mariner's general credibility. (D.I. 2 at 8.) He implies that if Mariner lied about being with his girlfriend, then Mariner must have lied about Downes' involvement in the crime. However, Downes does not acknowledge that, on cross-examination, the defense specifically pointed out Mariner's lies regarding his involvement in the crimes. During his initial interview with the police, Mariner completely denied having been with Downes on the relevant night.[6] After pointing out this lie, the defense said "[s]o either the statement you are making in Court is incorrect or the statement you made to the police was incorrect." (D.I. 15, Appendix to Defendant's Opening Brief in *Downes v. State*, 771 A.2d 289.) Mariner replied "[t]he statement I made to the police was incorrect until I told him to turn it off and I would give him the whole truth and nothing but the truth." *Id.*

Admittedly, the defense did not ask whether or not Mariner actually saw his girlfriend on the night of the crimes. However, as stated by the Delaware Supreme Court, this issue was only a collateral one. *Downes*, 771 A.2d at 291–92. The defense's cross-examination revealed Mariner's perjury to the jury, yet the jury apparently found Mariner credible enough to convict Downes. Further, Downes has not demonstrated that any alleged discrepancy in how Mariner spent his evening prior to meeting Downes on the night of the crimes was likely to change the outcome of the trial. Thus, I am not persuaded that "no reasonable juror would have voted to find him guilty beyond a reasonable doubt" if they had known that Mariner may have lied about picking up his girlfriend from work. Accordingly, I con-

---

**6.** The police interview transcript reveals that Mariner initially denied any involvement in the crimes, claiming that he had been with his girlfriend, Carolyn Stevenson, until 12:30 or 1 a.m. on the night of the offenses. (D.I. 15, August 29, 1994 Homicide Investigation Transcribed Interview, at 3.) However, later on in the interview, Mariner changed his story, claiming that he was not with his girlfriend on the night of August 25, 1994. Rather, he said he drove Downes "wherever he wanted ... to go." *Id.* at 14. Later in the interview, Mariner slightly changed his story, stating that he had picked up his girlfriend from work, and while they were in his car, Downes beeped him and told Mariner to pick him up. *Id.* at 21–22. Mariner then stated that he brought his girlfriend home, and then went with Downes. *Id.* at 22.

clude that equitable tolling is not warranted on this ground.[7]

In short, "the circumstances in [Downes'] case simply do not warrant the application of equitable tolling after such lengthy periods of time had elapsed following his conviction before he sought state and federal relief." *Schlueter*, 384 F.3d at 77. To the extent Downes' failure to timely file his § 2254 petition was the result of a mistake, a mistake does not constitute an extraordinary circumstance. *Wilmer v. Carroll*, 2003 WL 21146750, at *5 (D.Del. May 16, 2003).

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

■ If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.

*Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

I conclude that Downes' application for habeas relief is time-barred. Reasonable jurists would not find this conclusion to be debatable. Consequently, I decline to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Downes' application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

## ORDER

At Wilmington, this 7th day of December, 2004, for the reasons set forth in the Memorandum Opinion issued in this matter today;

IT IS HEREBY ORDERED that:

1. Petitioner William D. Downes' application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1; D.I. 2.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

---

7. Downes also argues that he is actually innocent because the State failed to establish the element of mens rea. This argument, however, involves the legal sufficiency of the evidence, not factual innocence. *See Bousley v.* U.S., 523 U.S. 614, 624, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("actual innocence means factual innocence, not mere legal insufficiency"). Thus, it does not provide a basis for reaching the merits of his petition.