**Gerald TEAGLE, Appellant**

v.

**David DIGUGLIELMO, Supt. SCI Graterford; District Attorney, County of Philadelphia; Attorney General of the State of Pennsylvania.**

No. 08–2587.

United States Court of Appeals, Third Circuit.

Argued June 11, 2009.

Opinion Filed: July 8, 2009.

---

**210**

Cheryl J. Sturm, Esq. (Argued), Chadds Ford, PA, for Appellant.

John W. Goldsborough, Esq. (Argued), Philadelphia, PA, for Appellees.

Before: McKEE, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Gerald Teagle appeals from the final order of the United States District Court for the Eastern District of Pennsylvania denying his petition for a writ of habeas corpus. The sole question certified to us on appeal from the order denying habeas relief is whether Teagle is entitled to equitable tolling of the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") statute of limitations on the basis of his contention of actual innocence. Because Teagle fails to establish a valid claim of actual innocence, we will affirm without deciding whether such a claim can equitably toll AEDPA's statute of limitations.

### I.

On May 12, 1983, following a four-day bench trial in Pennsylvania state court, Appellant Gerald Teagle and co-defendant John Hunter were convicted for the first degree murder of Marvin York. At trial,[1] the defendants admitted that they shot and killed York but testified that the killing was in self-defense as they had seen York make a move for his gun before they shot him. The Commonwealth presented testimony from York's longtime friend, Konrad Jett. Jett testified that he was approaching the passenger side of York's car when he saw Teagle and Hunter, with guns drawn, walk up to the driver's side, where York was seated, and each fire four to six shots at York at point blank range. Jett then ran to the driver's side of the car, pushed York into the passenger seat, and began to drive to a hospital, getting about four blocks before being stopped by police. Jett testified that he did not know

---

1. The parties did not include the state court Notes of Testimony in the appendix, and we have been unable to procure them on our own. As the parties do not take issue with the District Court's summary of the trial testimony, we derive our discussion of that testimony from the District Court's opinion.

of any incidents of violence involving York and that York was not carrying a gun on the day he was killed. The Commonwealth also called a police officer who testified that no weapons were found on York's person, in York's car, or elsewhere in the vicinity of the crime scene. Another officer testified that, immediately after the shooting, he saw Jett get into the driver's side of York's car and drive away; the officer stated that, before he pulled it over, he did not observe any objects thrown from the car.

Teagle and Hunter testified that York, on the day he was killed, had beaten them with a gun and threatened to kill them if they did not repay him for drugs that he had given them earlier. They claimed that, immediately before they shot York, they were approaching his car to tell him that they needed more time to raise the money they owed him. Teagle and Hunter said that, as they approached, they saw York reach for his weapon and, believing he intended to kill them, they drew their weapons and shot him multiple times. Teagle testified that as he approached York's car he had a gun in his pocket, that the gun had a round in the chamber, and that the gun was "cocked," i.e., ready to be fired. Teagle also noted that he knew York always carried a weapon and that, when driving, York kept his weapon under his seat.

Teagle was convicted and, on September 20, 1984, was sentenced to life imprisonment. On November 8, 1985, the Pennsylvania Superior Court affirmed the trial court's judgment on direct appeal. On August 15, 1986, and February 12, 1997, Teagle filed unsuccessful petitions for state postconviction collateral relief. On June 28, 2004, Teagle filed his third petition for state postconviction relief, asserting claims similar to those presented in the habeas

petition at issue. On August 25, 2005, the petition was dismissed as untimely; this decision was affirmed by the Pennsylvania Superior Court. The Pennsylvania Supreme Court denied *allocatur* on March 7, 2007. On July 5, 2007, Teagle filed the petition for habeas corpus that is the subject of the instant appeal.

According to Teagle's habeas petition, on March 23, 2004, Jett approached Teagle's sister at a funeral and stated that he wanted to clear his conscience about the testimony he gave at her brother's trial. Teagle's sister relayed this information to Appellant's attorney, Cheryl Sturm, who arranged for a private investigator to interview Jett. According to Ms. Sturm's investigator, Jett was interviewed on May 17, 2004, and stated that York, on the day he was killed, announced that he was going to kill Teagle and Hunter because he gave them heroin to sell and they had disrespected him by not paying for it. Jett further stated that, at the time of the shooting, he saw Teagle and Hunter approaching York's car from different directions before they shot York and that, after the shooting, he found a gun in York's lap, which he "passed off to one of the guys on the corner" before driving away. Jett claimed that he lied at trial because he "didn't want to make [York] look bad.... I was angry and wanted to see [Teagle and Hunter] burn. They killed my friend and almost killed my children."[2] Jett stated that he was not able to see whether York brandished the weapon at Teagle and Hunter before he was shot.

Teagle's habeas petition also includes statements from Anthony Eure and Mikal Muhammad that corroborate Teagle's and Hunter's testimony that York, a few hours before he was shot, had pistol whipped and

---

**2.** Jett's children were in York's car at the time    of the shooting.

threatened to kill them. Eure and Muhammad also noted that York had a reputation for violence. Eure asserted that he told Teagle's trial counsel that York beat and threatened to kill Teagle and Hunter, but that the lawyer never took his statement or called him to testify.

The District Court denied the habeas petition on the grounds that it was time-barred under the AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1), finding that Teagle was not entitled to statutory tolling under § 2244(d)(2) because the state court rejected his third postconviction relief petition as untimely. The District Court also found that, even assuming such an argument could be grounds for equitable tolling of the AEDPA's statute of limitations, Teagle failed to establish his actual innocence.

## II.

We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. The District Court issued a certificate of appealability as to whether Teagle is entitled to equitable tolling in light of his actual innocence argument.[3] We exercise plenary review over the District Court's refusal to equitably toll the AEDPA's statute of limitations. *Urcinoli v. Cathel,* 546 F.3d 269, 272 (3d Cir.2008).

## III.

Teagle argues that the one year statute of limitations should be equitably tolled based on the extraordinary circumstance of his actual innocence. While other Circuits have debated the issue,[4] we have not yet decided whether a claim of actual innocence may equitably toll AEDPA's statute of limitations. *McKeever v. Warden SCI–Graterford,* 486 F.3d 81, 84 n. 5 (3d Cir. 2007). We need not do so to resolve the instant case because, even assuming that a viable claim of actual innocence could equi-

**3.** One of Teagle's main arguments on appeal is that the District Court erred in finding that he was not entitled to statutory tolling under § 2244(d)(2), which provides that a "properly filed application for State post-conviction relief" tolls § 2244(d)(1)'s one-year limitations period for the time during which the properly filed application is pending. As this issue is outside the scope of the certificate of appealability, we may not consider it. *See Villot v. Varner,* 373 F.3d 327, 337 n. 13 (3d Cir.2004). While we have the authority to expand the scope of the certificate of appealability, we refuse to do so here because reasonable jurists could not debate the District Court's conclusion that an application for state postconviction relief is not "properly filed" under § 2244(d)(2) when it has been deemed untimely by the state courts. *See Allen v. Siebert,* 552 U.S. 3, 4, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007) ("Because [the habeas petitioner's] petition for state postconviction relief was rejected as untimely by the [state] courts, it was not 'properly filed' under § 2244(d)(2)."); *Pace v. DiGuglielmo,* 544 U.S. 408, 414, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for

purposes of § 2244(d)(2)." (quoted reference omitted; alteration in original)). As noted in *Pace,* it would have been advisable for defense counsel to have filed "a 'protective' petition in federal court[,] asking the federal court to stay and abey the federal habeas proceedings until state remedies [were] exhausted." *Pace,* 544 U.S. at 416, 125 S.Ct. 1807 (citing *Rhines v. Weber,* 544 U.S. 269, 278, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005)). This is so because, given the time elapsed between Teagle's conviction and the filing date of the third application for state postconviction relief, and the fact that Teagle's second application for state postconviction relief was dismissed as untimely, defense counsel should have been aware that timeliness was at issue.

**4.** *Compare, e.g., David v. Hall,* 318 F.3d 343, 347 (1st Cir.2003) ("[D]efendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming ...."), *with Souter v. Jones,* 395 F.3d 577, 599 (6th Cir.2005) ("[E]quitable tolling of [AEDPA's] one-year limitations period based on a credible showing of actual innocence is appropriate.").

tably toll the limitations period, tolling would be appropriate only if Teagle met the standard for such a claim, i.e., that he offered "new reliable evidence" establishing that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Hubbard v. Pinchak,* 378 F.3d 333, 338–40 (3d Cir.2004) (describing *Schlup* and its progeny). The Supreme Court has emphasized that this standard "is demanding and permits review only in the extraordinary case." *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted); *see also Sweger v. Chesney,* 294 F.3d 506, 523–24 (3d Cir.2002) (describing the burden a petitioner must meet to establish actual innocence as "extremely high").

Teagle supports his claim of actual innocence with the statements from Jett, Eure, and Muhammad, which we find insufficient to meet the *Schlup* standard. Jett's affidavit recants his trial testimony, essentially admitting that the bulk of such testimony was perjury. Such suspicious and untrustworthy evidence does not, in the absence of additional corroborating evidence or circumstances, meet the standard of reliability contemplated by *Schlup*. *See Landano v. Rafferty,* 856 F.2d 569, 572 (3d Cir.1988) ("Courts have historically viewed recantation testimony with great suspicion."); *see also Commonwealth v. Henry,* 550 Pa. 346, 706 A.2d 313, 321 (1997) ("Recantation testimony is extremely unreliable. When the recantation involves an admission of perjury, it is the least reliable form of proof." (internal citations omitted)). The other two statements not only present reliability concerns but contain information that is not "new," as it was available at trial and defense counsel chose not to present it.[5] *Goldblum v. Klem,* 510 F.3d 204, 226 n. 14 (3d Cir. 2007) ("Evidence is not 'new' if it was available at trial, but a petitioner 'merely chose not to present it to the jury.'" (quoting *Hubbard v. Pinchak,* 378 F.3d 333, 340 (3d Cir.2004))).

Furthermore, even assuming that the three affidavits constituted new and reliable evidence, they fail to establish that it is more likely than not that no reasonable juror would have found Teagle guilty beyond a reasonable doubt. All three affidavits state that York was a violent person and had publicly beaten and threatened to kill Teagle and Hunter in the hours preceding his death. While this corroborates the defendants' trial testimony, it also would allow a reasonable juror to conclude that Teagle had a strong motive for murdering York. Jett's affidavit corroborates the defendants' claim that York was armed at the time he was killed but does not indicate which man was the first to brandish a firearm. Even under these assumed facts, it would not be unreasonable for a juror to conclude that Teagle—who by his own admission was carrying a loaded, cocked firearm when approaching a man who had earlier beaten and threatened to kill him—was the first to act.

## IV.

For the foregoing reasons, we will affirm the District Court's order denying habeas relief.

---

**5.** Both statements describe eyewitness accounts of York's beating and threatening Teagle and Hunter hours before they shot him. Eure asserts that he told Teagle's trial counsel about what he saw, but that counsel did not follow up on the information.