Terrance LEWIS

v.

**Harry WILSON, et al.**

**Civil Action No. 05–4864.**

United States District Court, E.D. Pennsylvania.

June 22, 2010.

David M. Laigaie, Dilworth Paxson LLP, Philadelphia, PA, for Terrance Lewis.

Thomas W. Dolgenos, District Attorney's Office, Philadelphia, PA, for Harry Wilson et al., District Attorney of the County of Philadelphia.

Molly Selzer Lorber, Philadelphia District Attorney's Office, Philadelphia, PA, for District Attorney of the County of Philadelphia, Attorney General of the State of Pennsylvania.

## ORDER

BERLE M. SCHILLER, District Judge.

AND NOW, this 22nd day of June, 2010, upon consideration of the Petition for Writ of Habeas Corpus, Petitioner's Initial and Supplemental Briefs in Support of his Petition, the Commonwealth's Response to the Petition and Response to the Supplemental Brief, inclusive of all exhibits thereto, the transcript of the evidentiary hearing conducted on April 29, 2009, Petitioner's trial brief, the Commonwealth's Post-Hearing Response, Petitioner's Reply thereto, the Commonwealth's Supplemental Post-Argument Brief, Petitioner's Response and Supplemental Post-Hearing Submission, the Commonwealth's Response thereto, Petitioner's Second Supplemental Post-Hearing Submission, The Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, the Commonwealth's Objections to the Report and Recommendation, Petitioner's Objections to the Report and Recommendation, the Commonwealth's Response thereto, and the state court record, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The Petition for Writ of Habeas Corpus is DISMISSED and DENIED without any further evidentiary hearing;

3. A certificate of appealability is GRANTED with respect to Ground Seven; and

4. Petitioner has not shown that reasonable jurists would disagree with this court's disposition of his other claims. Consequently, a certificate of appealability is DENIED with respect to Grounds On, Two, Three and Six.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS, United States Magistrate Judge.

On August 6, 1996, when Terrance Lewis ("Petitioner") was only seventeen years old, Hulon Bernard Howard was shot once in the back and died. The police, based on information provided by Lena Laws, a crack-addicted witness who had smoked crack shortly before the shooting, identified Petitioner as a participant in the robbery that preceded Mr. Howard's senseless death. More than one year after the crime had occurred, the police arrested Petitioner, who along with his two codefendants, Jimel Lawson and Jehmar Gladden, was tried jointly in May 1999. Petitioner was convicted of second degree murder and given the mandatory sentence in Pennsylvania of life imprisonment.[1]

Over the eleven years that have passed since his trial, evidence has gradually surfaced to demonstrate that Petitioner was not present at and did not participate in the robbery and death of Mr. Howard. This court conducted an evidentiary hearing on April 29, 2009; Kizzi Baker, a new witness, Tanisha Thorton, Petitioner's sister, Jehmar Gladden and Petitioner testified. Based upon credible testimony, the court believes that Petitioner may not have been present at or participated in the tragic events of August 6, 1996; he may be actually innocent. However, as the court will explain, because of the process by which Petitioner sought relief in the state courts, the stringent requirements for relief imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the Supreme Court's failure to hold that habeas relief can be granted to one who is actually innocent based solely upon his non-guilt, Petitioner cannot obtain relief based upon any claim herein presented. Reluctantly, this court recommends that Petitioner be denied relief, without further hearings.

## I. BACKGROUND AND PROCEDURAL HISTORY [2]

The facts leading to Petitioner's arrest and conviction, as summarized by the Pennsylvania Superior Court,[3] are as follows:

On the night of August 6, 1996, [Petitioner] and co-defendants Jimel "Mellow" Lawson (Lawson) and Jehmar "J.R." Gladden (Gladden) went to the home of Hulon Bernard Howard (the victim) to collect money the victim owed to Lawson for cocaine. [Petitioner] was armed with a shotgun, Lawson was armed with a handgun and Gladden was apparently unarmed. Present at the home were the victim, Lena Laws, a woman named Denise and a man named Omar.

[Petitioner] and his two co-defendants proceeded to rob them at gunpoint. After searching them and taking $20.00 from Ms. Laws, Lawson asked the victim when he planned to pay him the

---

1. Jimel Lawson was convicted of first-degree murder as the shooter; the jury declined to impose the death penalty and he was sentenced to life imprisonment. Jehmar Gladden was convicted of second-degree murder and sentenced to life imprisonment.

2. The facts contained in this background and procedural history were gleaned from the Petition for Writ of Habeas Corpus Petitioner's Initial Brief in Support, Petitioner's Supplemental Brief, the Commonwealth's Response to the Petition, the Commonwealth's Response to Petitioner's Supplemental Brief, the other documents filed by the parties, all exhibits attached to the parties' filings, and the state court record.

3. This summary of the evidence supports Petitioner's conviction and it reveals the Commonwealth's theory of the case. The court does not endorse this summary to the extent that it represents that Petitioner was present at and implicated in Mr. Howard's death.

money the victim owed for cocaine. After the victim said he would pay the next day, Lawson shot and killed the victim. *Commonwealth v. Lewis*, No. 1842 EDA 1999, slip op. at 1–2 (Pa.Super.Ct. Nov. 15, 2000) ("Super. Ct. Dir. App. op.").

Petitioner was convicted of second degree murder, robbery and criminal conspiracy on May 24, 1999; he was sentenced to a life term of incarceration. *Commonwealth v. Lewis*, January Term 1998 No. 869, slip op. at 1 (Phila.Co. Dec. 22, 2006) ("Tr. Ct. PCRA op. II"). Represented by new counsel, *see* Pet. at 10, Petitioner appealed to the Pennsylvania Superior Court and his conviction and sentence were affirmed on November 15, 2000.[4] Tr, Ct. PCRA op. II at 1. Allowance of appeal (*"allocatur"*) from the Pennsylvania Supreme Court was denied on April 16, 2001. *Id.* Petitioner did not seek *certiorari* from the United States Supreme Court.

Next, on January 30, 2002, Petitioner sought relief under Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons.Stat. Ann. §§ 9541–46. Tr. Ct. PCRA op. II at 1. Court-appointed counsel filed an amended petition on March 18, 2002. *Id.* The PCRA court dismissed the entire petition on February 13, 2003 for lacking in merit. *Id.* at 1–2. The Superior Court affirmed on December 8, 2004,

finding that none of Petitioner's claims had merit.[5] *Commonwealth v. Lewis*, No. 757 EDA 2003, slip op. at 2–7 (Pa.Super.Ct. Dec. 8, 2004) ("Super. Ct. PCRA. op. I"). On August 11, 2005, the Pennsylvania Supreme Court denied *allocatur.* Tr. Ct. PCRA op. II at 2. Petitioner did not seek *certiorari* from the United States Supreme Court.

On September 2, 2005, Petitioner filed his second PCRA petition. Tr. Ct. PCRA op. II at 2. Counsel was appointed and filed an amended petition on May 23, 2006. *Id.* On August 18, 2006, the PCRA court gave Petitioner notice of its intent to dismiss the PCRA petition on the ground that it was untimely. *Id.* Petitioner, through counsel, timely objected on August 25, 2006 but the court dismissed the PCRA petition on September 21, 2006. *Id.* Petitioner, through counsel, then appealed to the Superior Court. *Id.* On November 10, 2006, the PCRA court ordered Petitioner to file a statement of matters complained of on appeal pursuant to Pa. R.App. P.1925(b). *Commonwealth v. Lewis*, No. 3020 EDA 2006, slip op. at 3 (Pa.Super.Ct. Nov. 14, 2007) ("Super. Ct. PCRA. op. II"). On November 14, 2007, the Superior Court concluded that Petitioner had failed to file the required statement of matters, *id.* at 3–4, and, as a result, had waived all appellate issues.[6] *Id.* at 2–7. On April 29, 2008,

4. Petitioner argued that: (1) trial counsel was ineffective for failing to seek suppression of testimony concerning Petitioner's alleged prior sale of narcotics; and (2) the trial court abused its discretion by denying the jury's request to see the police diagram of the house where the crime occurred and to read back a portion of Ms. Laws' testimony. Super. Ct. Dir. App. op. at 2.

5. Petitioner argued that direct appellate counsel had been ineffective for failing to allege that trial counsel had been ineffective for failing to: (1) request that the trial court dismiss a juror for falling asleep during the trial; (2) call as witnesses two detectives who would

have testified whether Ms. Laws had made a "fifth statement" to the police; and (3) call Police Sergeant Mariano Maddela to testify that, on the night of the shooting, Ms. Laws had made a statement which contradicted her trial testimony. *Commonwealth v. Lewis*, No. 757 EDA 2003, slip op. at 4–5, 869 A.2d 10 (Pa.Super.Ct. Dec. 8, 2004).

6. Petitioner sought to raise claims that the PCRA court had erred in dismissing his petition as untimely because: (1) he had timely presented a claim of "after discovered evidence," and (2) his plausible claim of actual innocence should never be time-barred. Super, Ct. PCRA op. II at 2.

the Pennsylvania Supreme Court denied *allocatur.* *Commonwealth v. Lewis,* 597 Pa. 704, 948 A.2d 803 (2008) (table). Petitioner did not seek *certiorari* from the United States Supreme Court.

The instant petition for federal habeas corpus relief was filed on September 12, 2005 and the brief in support hereof on October 13, 2005. In the petition and brief, Petitioner raised claims that: (1) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to subpoena Police Sergeant Mariano Maddela to testify for the defense; (2) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to call Detectives Kane and Hughes to testify that Ms. Laws had not, in fact, given them an additional statement which was consistent with her trial testimony concerning how many times she had seen Petitioner prior to the day of the crime; (3) direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to seek removal of a juror who fell asleep during the trial; and (4) newly discovered evidence, an affidavit from co-defendant Gladden, exonerates Petitioner. Pet. at 9, 1–7 (reverse); Pet'r's Br. at 5, 7–28. In his May 19, 2008 Supplemental Brief, Petitioner claims that: (5) new evidence (the affidavits of Gladden and Kizzi Baker) establishes his actual innocence, thereby excusing the procedural default of his habeas claims; (6) the state courts erred in determining that his actual innocence claim had been untimely presented in his second PCRA petition; and (7) trial counsel rendered ineffective assistance by failing to conduct any pre-trial investigation, which would have uncovered the exonerating testimony of Kizzi Baker. Pet'r's Supplemental Brief ("Pet'r's Supp. Br.") at iii, 5–17.

## II. DISCUSSION

### A. Non–Cognizable Claim—Alleged State Court Error in Finding that Second PCRA Petition was Untimely—Ground Six

■ Habeas relief is only available for violations of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Consequently, claims based upon state law are not cognizable. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Further, habeas review concerns only proceedings that resulted in the petitioner's conviction, not errors that arose during state collateral proceedings. *See Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). For this reason, claims premised upon delay, or other problems encountered obtaining state collateral relief, are inappropriate grounds for granting habeas relief. *See id.* Inasmuch as Ground Six is based on alleged state courts error in applying the PCRA timeliness requirement, it is not cognizable and should be dismissed without review. *See Hassine,* 160 F.3d at 954.

### B. Exhaustion and Procedural Default

#### 1. Basic Principles

■ A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County,* 959 F.2d 1227, 1230 (3d Cir.1992). However, in light of a May 9, 2000 order of the Pennsylvania Supreme Court, it is no longer necessary for Pennsylvania inmates to seek allowance of appeal from the Pennsylvania Supreme Court in order to ex-

haust state remedies. *See Lambert v. Blackwell,* 387 F.3d 210, 233–34 (3d Cir. 2004).

■■■ If a habeas petitioner has presented his claim to the state courts but the state courts have declined to review the claim on its merits because the petitioner failed to comply with a state rule of procedure when presenting the claim, the claim is procedurally defaulted. *See Harris v. Reed,* 489 U.S. 255, 262–63, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). When a state court has declined to review a claim based on a procedural default and the claim is not later addressed on the merits by a higher court, the habeas court must presume that the higher state court's decision rests on the procedural default identified by the lower state court. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Finally, when a habeas petitioner has failed to exhaust a claim and it is clear that the state courts would not consider the claim because of a state procedural rule, the claim is procedurally defaulted.[7] *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

■■■ Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. 2546. In order to demonstrate cause, the petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the state's procedural rule."

*Id.* at 753, 111 S.Ct. 2546 (citation omitted). Examples of cause include: (1) a showing that the factual or legal basis for a claim was not reasonably available; (2) a showing that some interference by state officials made compliance with the state procedural rule impracticable; (3) attorney error that constitutes ineffective assistance of counsel. *Id.* at 753–54, 111 S.Ct. 2546.

■■■ The fundamental miscarriage of justice exception is limited to cases of "actual innocence." *Schlup v. Delo,* 513 U.S. 298, 321–22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In order to demonstrate that he is "actually innocent," the petitioner must present new, reliable evidence of his innocence that was not presented at trial.[8] *Id.* at 316–17, 324, 115 S.Ct. 851. The court must consider the evidence of innocence presented along with all the evidence in the record, even that which was excluded or unavailable at trial. *Id.* at 327–28, 115 S.Ct. 851. Once all this evidence is considered, the petitioner's defaulted claims can only be reviewed if the court is satisfied "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851.

### 2. Ground Seven—Trial Counsel was Ineffective for Failing to Investigate and Present Testimony from Kizzi Baker—is Procedurally Defaulted

■■■ Petitioner failed to present Ground Seven on direct appeal or in his first PCRA petition. *See supra* 3 & nn. 4–5. He did raise it in the May 23, 2006 memorandum of law PCRA counsel filed in support of the amended, second PCRA

---

**7.** A common reason the state courts would decline to review a claim that has not been presented previously is the expiration of the statute of limitations for state collateral review. *See Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir.2001).

**8.** This evidence need not be directly related to the habeas claims the petitioner is presenting, because the habeas claims themselves need not demonstrate that he is innocent. *See Schlup,* 513 U.S. at 315, 115 S.Ct. 851.

petition. *See* Respondent's Motion to Supplement Record, Exhibit A (Memorandum of Law) at 7–9. However, Petitioner failed to include this claim of trial counsel's ineffective assistance in his PCRA appeal. *See supra* 4 & n. 6. As such, the claim is unexhausted and, because the PCRA statute of limitations expired for the claim on May 24, 2006, he cannot exhaust the claim *via* a third PCRA petition.[9] Thus, this unexhausted claim is procedurally defaulted.[10] *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir.2001).[11] Petitioner asserts that his actual innocence excuses the default *via* Grounds Four and Five.[12]

Petitioner maintains that the proposed testimony of Ms. Baker and Mr. Gladden (as reflected in their affidavits) demonstrates that he did not enter the victim's home on August 6, 1996 and, therefore, could not have participated in the events which caused the victim's death. Co-defendant Gladden admitted that he was

9. Since Petitioner did not seek *certiorari* in the United States Supreme Court on direct appeal, his conviction became final on July 16, 2001, ninety days after the Pennsylvania Supreme Court denied *allocatur* on April 16, 2001. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(3); Sup.Ct. R. 13(1). If this were the appropriate starting date for the defaulted claim, the PCRA statute of limitations would have expired for it on July 16, 2002. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(1). However, Petitioner's defaulted claim is based on new evidence, which suggests a later starting date. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(1)(ii). According to Petitioner, the new evidence (Kizzi Baker's proposed testimony) was discovered on March 24, 2006. *See* Pet'r's Supp. Br. at 6. The PCRA requires that a new evidence claim be filed within 60 days of discovery, *see* 42 Pa. Cons.Stat. Ann. § 9545(b)(2), hence, the Ground Seven had to be filed by May 24, 2006. *Id.*

10. The Commonwealth argues that Ground Seven is time-barred. *See* Post–Hearing Response to Petition for Writ of Habeas Corpus ("Commw. Resp.") at 12–18. The court disagrees. Petitioner did not learn of Ms. Baker's proposed testimony until shortly after his sister spoke to her on March 24, 2006. Thereafter, through PCRA counsel, he obtained her affidavit and submitted it in support of his amended PCRA petition on May 23, 2006. *See* Commw. Resp. at 3. This demonstrates diligence. Petitioner informed this court on February 5, 2007 that he wanted to supplement his habeas petition to include this claim. *See* Document No. 20. On February 12, 2007, this court granted his request. Document No. 22. Once his state court proceedings ended on April 29, 2008, Petitioner filed his supplemental brief on May 12, 2008, adding the new claim. *See* Commw. Resp. at 4. In light of this history, the statute of limitations for this claim should have begun, based on 28 U.S.C. § 2244(d)(1)(D), on March 24, 2006, when Petitioner's sister learned the new evidence, completely by chance. After that point, Petitioner informed this court of the claim within one year and the court told him he should defer adding the claim until after his state court proceedings ended. *See* Document No. 22. He did so within the thirty day deadline this court had imposed upon him previously. *See* Document No. 15. In light of this history, Ground Seven has been timely raised.

11. Even if Ground Seven had been included in the PCRA appeal, since the Superior Court concluded that Petitioner had waived all appellate issues due to counsel's failure to file the required statement of matters complained of on appeal, *see* Super. Ct. PCRA op. II at 2–7, Ground Seven would be procedurally defaulted.

12. Petitioner does not argue that his asserted actual innocence is a substantive claim for habeas relief. Were he to do so, the court could not consider said claim because the Supreme Court has explained that free-standing claims of innocence (i.e., ones that do not assert an independent constitutional violation in the underlying state criminal proceeding) do not state a ground for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400–01, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The Court, however, has only assumed an exception to this rule and opined that the execution of one who is actually innocent would be unconstitutional. *Id.* at 417, 113 S.Ct. 853. Because Petitioner is not subject to the death penalty, this assumed constitutional right is inapplicable.

present at the August 6, 1996 robbery and homicide of Mr. Howard. *See* Affidavit of Jehmar Gladden at 1.[13] He averred that Petitioner was not present at that location and, hence, did not participate in the robbery or victim's death. *Id.* Mr. Gladden further explained that he told his trial counsel that Petitioner was innocent but was advised that revealing this information would incriminate him, where the Commonwealth had "no case" against him, and would contradict his intended trial defense. *Id.* at 2. Mr. Gladden states that he is willing to testify that Petitioner was not involved in the crime. *Id.*

Kizzi Baker lived near the victim's home on August 6, 1996; she was standing on the corner of 61st and Samson Streets and could see the victim's house at the time of the crime. *See* Affidavit of Kizzi Baker at 1.[14] Ms. Baker stated that, first, she saw two teenage males park their car near the victim's home and then enter the home; a few minutes later, she saw a third man walk past her and enter the home. *Id.* About ten minutes later, she heard a gunshot from the vicinity of the victim's home and turned to look in that direction. *Id.* She saw the victim's screen door open and the first two men run out of the house, enter their car, and drive away. *Id.* The third man then exited the house alone; he walked past her. *Id.* Next, Ms. Baker saw

the victim's girlfriend, Lena Laws, exit the home, running and screaming. *Id.* Finally, she saw a middle-aged man and woman, who she did not recognize, run out of the victim's home. *Id.* at 2. Ms. Baker further stated that she knew Petitioner in August 1996 because he dated her neighbor and was often in her neighborhood. *Id.* She stated unequivocally that Petitioner was not at the crime scene. *Id.* Ms. Baker further stated that, at the time of the crime, she did not approach the police because she was pregnant and fearful that something might happen to her since she lived near the crime scene. *Id.*

These affidavits, if true, certainly would exculpate Petitioner because they indicate that he did not participate in the charged offenses. Specifically, they contradict the testimony of Lena Laws—the only eyewitness to the crime who testified at trial—who had identified Petitioner as the man who had entered the victim's house armed with a shotgun and directed co-defendant Gladden to search her, Omar, and Denise for money, before co-defendant Lawson shot the victim. (N.T. 5/17/99 at 64–73). The affidavits constitute new evidence because they were not available at the time of trial.[15]

To assess the reliability of these affidavits, the court conducted an evidentiary hearing on April 29, 2009.[16] At that hear-

---

**13.** A copy of Mr. Gladden's affidavit is attached as Exhibit M to Petitioner's Supplemental Brief.

**14.** A copy of Ms. Baker's affidavit is Exhibit J to Petitioner's Supplemental Brief.

**15.** The Commonwealth contends that co-defendant Gladders proposed testimony is not new evidence because he could have testified at trial and, like Frank Hubbard in *Hubbard v. Pinchak*, 378 F.3d 333 (3d Cir.2004), Petitioner simply chose to omit this testimony at trial. *See* Response to Pet'r's Supplemental Brief at 16–17. The Commonwealth's citation to *Hubbard* is inapposite because, in *Hubbard*, the purported new evidence was

Hubbard's own testimony, which he could control at trial. *See Hubbard,* 378 F.3d at 340. By contrast, Petitioner could not compel co-defendant Gladden to testify at his trial because Gladden had a Fifth Amendment right not to incriminate himself and, in his affidavit, Gladden explains that his trial counsel advised him to keep silent concerning Petitioner's Innocence because admitting presence in the house implicated his own guilt and, therefore, was against his own interest and inconsistent with his attorney's trial strategy.

**16.** On December 17, 2008, the court appointed David M. Laigaie, Esquire to represent Petitioner, as is required when an evidentiary

ing, Ms. Baker, (N.T. 4/29/09 at 6–65), and Mr. Gladden, *id.* at 78–128, testified credibly and consistently with their prior affidavits. Ms. Thornton corroborated Ms. Baker's explanation of how they met and what they discussed concerning Petitioner's innocence. *Id.* at 66–71. In addition, Petitioner testified that he was not inside Mr. Howard's home on the night of the shooting and, hence, could not have participated in the robbery and shooting.[17] *Id.* at 134, 156. Petitioner also testified that, prior to being arrested for Mr. Howard's shooting, he had no criminal history. *Id.* at 135–36. The court found the testimony of these witnesses to be credible, hence, the court believes that Petitioner is innocent. Moreover, in the court's view, in light of the new evidence Petitioner presented at the April 29, 2009 hearing, it is more likely than not that no reasonable juror would have convicted Petitioner. Accordingly, his procedural default is excusable. *See Schlup*, 513 U.S. at 329, 115 S.Ct. 851.

On November 30, 2009, Petitioner's habeas counsel submitted a one-page statement from Jimel Lawson. Supplemental Post–Hearing Submission in Support of Terrance Lewis' Petition for Writ of Habeas Corpus ("Pet'r's First Supp. Sub."), Exhibit E. In this statement, Mr. Lawson said he does not know Petitioner and Petitioner did not sell drugs with him; he first met Petitioner at approximately the time of their joint trial for Mr. Howard's death, and he has not had contact with Petitioner or Mr. Gladden since they were incarcerated in 1997. *Id.* Mr. Lawson's statement is clearly exculpatory as it refutes Ms. Laws' trial testimony that Petitioner had sold drugs with Messrs. Lawson and Gladden out of Mr. Howard's home on 50 occasions prior to Mr. Howard's death, (N.T. 5/17/99 at 52, 139), and that Petitioner was present at the shooting. *Id.* at 46. Were Mr. Lawson to testify at a future hearing in a manner consistent with his recent statement, the court's conclusion that Petitioner is innocent would be reinforced and Petitioner's ability to satisfy the *Schlup* standard would increase. However, as will be explained *infra* Section II(B)(3), Petitioner is barred from having a hearing concerning the merits of this ineffective assistance of counsel claim, thus, it would be futile to conduct further hearings concerning his actual innocence.[18]

hearing is to be held. *See* Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts. Mr. Laigaie has diligently and zealously advocated Petitioner's cause, in the finest tradition of the bar. The court appreciates his work in this matter and, should this court's decision be affirmed on appeal, hopes that Mr. Laigaie will continue to represent Petitioner in clemency proceedings before the Governor of Pennsylvania.

17. Petitioner also testified that trial counsel informed him during the trial that the Commonwealth had offered him a plea bargain in this case to serve no more than ten years, if he testified against Mr. Lawson. (N.T. 4/29/09 at 150). Petitioner told trial counsel to reject this offer because he was not at Mr. Howard's home on the night of the crime, hence, he could not testify about what had happened. *Id.* at 150–51. Trial counsel has

submitted an unsworn declaration wherein he confirms that the Commonwealth had offered Petitioner a deal if he would testify against Mr. Lawson, but that Petitioner rejected the plea, stating that he was innocent. Supplemental Post–Hearing Submission in Support of Terrance Lewis' Petition for Writ of Habeas Corpus, Exhibit C at [2].

18. Petitioner is barred from having an evidentiary hearing on the merits of his claim by 28 U.S.C. § 2254(e)(2). This provision does not bar an evidentiary hearing on his assertion of actual innocence to excuse his procedural default. *See Cristin v. Brennan*, 281 F.3d 404, 412–19 (3d Cir.2002). Nonetheless, since Petitioner is barred from having an evidentiary hearing on the merits of his claim and, without a hearing, he cannot prevail, it is futile to have an additional hearing that might allow further proof of his innocence.

### 3. Availability of a Hearing Concerning the Merits of Ground Seven

Ground Seven alleges that trial counsel rendered ineffective assistance for failing to find Ms. Baker prior to trial and present her testimony at trial. Pet'r's Supp. Br. at iii, 8–9. Claims of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. 2052. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. 2052. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, 104 S.Ct. 2052, but it is less than a preponderance of the evidence. *Id.* at 693, 694, 104 S.Ct. 2052.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697, 104 S.Ct. 2052. Further, counsel will not deemed to be ineffective for failing to present an unmeritorious claim or objection. *Parrish v. Fulcomer*, 150 F.3d 326, 328–29 (3d Cir.1998); *Moore v. Deputy Commrs. of SCI–Huntingdon*, 946 F.2d 236, 245 (3d Cir.1991).

 Because trial counsel's performance is entitled to a presumption of effectiveness, and since trial counsel is available to testify, Petitioner cannot carry his burden to rebut the presumption of effectiveness based on the alleged lack of investigation without an evidentiary hearing. *See Thomas v. Horn*, 570 F.3d 105, 125 (3d Cir.2009). Under the AEDPA, Petitioner may not have an evidentiary hearing concerning the merits of his claim if he failed to develop the factual basis for his claim in prior state court proceedings.[19] *See* 28 U.S.C. § 2254(e)(2). In order to "fail" to develop the factual basis for his claim, there must be a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). If a petitioner requests an evidentiary hearing concerning his counsel's strategic choice, and the state court declines to conduct a hearing, the petitioner is usually not at fault and a habeas hearing may be held.

---

**19.** If a habeas petitioner has failed to develop the factual basis for his claim in the state courts, there are exceptions which would allow the petitioner to have a federal hearing. *See* 28 U.S.C. § 2254(e)(2)(A)-(B). Despite recently filing a brief concerning the availability of a habeas hearing concerning Ground Seven, Petitioner's counsel has failed to argue that he can satisfy the exceptions. *See* Second Supplemental Post–Hearing Submission in Support of Terrance Lewis' Petition for Writ of habeas Corpus at 1–3. Hence, the court concludes that he cannot.

*See Thomas v. Varner,* 428 F.3d 491, 498 (3d Cir.2005). However, a request for a state evidentiary hearing does not constitute diligence if the petitioner has failed to support his state court request with available reliable evidence to support his claim. *See Lewis v. Horn,* 581 F.3d 92, 104 n. 7 (3d Cir.2009), It is the diligence requirement that Petitioner cannot satisfy, hence, the court concludes that, despite requesting an evidentiary hearing for his second PCRA petition, he "failed" to develop the factual basis for his claim and cannot obtain an evidentiary hearing on the merits of Ground Seven.

While Petitioner's second PCRA petition was pending, he discovered part of the factual basis for Ground Seven on March 24, 2006, when his sister, Tanisha Thornton, had a chance encounter with Ms. Baker. (N.T. 4/29/09 at 68–69). Ms. Baker executed an affidavit concerning the favorable evidence she could provide on May 4, 2006. Affidavit of Kizzi Baker at 1–2. PCRA counsel filed an amended PCRA petition along with Ms. Baker's affidavit on May 23, 2006. *See* Respondent's Motion to Supplement Record, Exhibit A. In his memorandum of law, PCRA counsel requested an evidentiary hearing at which Ms. Baker, Ms. Thornton and Mr. Gladden could testify. *See id.,* Memorandum of Law at 15. However, PCRA. counsel did not request that trial counsel testify at the hearing. No hearing was in fact held because the PCRA court dismissed the PCRA petition as untimely. Tr. Ct. PCRA op. IT at 2. Petitioner appealed, without raising Ground Seven, and his appeal was deemed waived because counsel had failed to properly file the statement of matters complained of on appeal. Super. Ct. PCRA. op. II at 2–7.

Petitioner, through his counsel, exhibited a lack of diligence in several regards, First, PCRA counsel failed to request that trial counsel testify at a PCRA hearing.

This was fatal because, although Ms. Baker could provide evidence concerning *Strickland* prejudice, she could not provide any evidence concerning whether trial counsel's performance was deficient. Instead, trial counsel had the crucial evidence concerning that component of *Strickland.* *See Thomas v. Horn,* 570 F.3d at 125. Although present counsel has obtained an unsworn statement from trial counsel which addresses the performance prong of *Strickland, see* Pet'r's First Supp. Sub., Exhibit C, PCRA counsel did not. PCRA counsel's failure to do so—no doubt stemming from his complete failure to request trial counsel's testimony at a PCRA hearing—also demonstrates a lack of diligence. *See Lewis v. Horn,* 581 F.3d at 104 n. 7. Further, although not directly related to the failure to obtain a hearing, PCRA counsel's subsequent failure to include Ground Seven in the Superior Court appeal and his failure to file the required statement of matters complained of on appeal further demonstrate a lack of diligence.

Because Petitioner is barred by § 2254(e)(2) from having an evidentiary hearing on the merits of Ground Seven, it would be futile to explore further the question of his actual innocence because his innocence, under current Supreme Court precedent, is merely a gateway to consider the merits of his defaulted constitutional claim. *See Schlup v. Delo,* 513 U.S. at 314–15, 115 S.Ct. 851; *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The Supreme Court has noted that a claim of innocence based on newly discovered evidence is not a ground for habeas relief. *Herrera,* 506 U.S. at 400, 113 S.Ct. 853 (citing *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)); *see also Fielder v. Varner,* 379 F.3d 113, 122 (3d Cir.2004) (Alito, J.) (citing *Herrera,* 506 U.S. at 400, 113 S.Ct. 853). This reluctance to allow

for substantive claims of actual innocence in habeas corpus has been justified on the grounds of the need for finality in criminal prosecutions and the disruption that it Would cause to our federal system. *Herrera*, 506 U.S. at 401, 416, 113 S.Ct. 853.

This court's inability to grant Petitioner habeas relief based upon his compelling showing of innocence is frustrating. However, that is the import of *Herrera* and, given the hierarchical structure of the federal court system, this court is required to follow *Herrera* and decline any direct habeas relief based upon Petitioner's showing of innocence.[20]

### 4. Certificate of Appealability

[14, 15] Petitioner cannot appeal the court's resolution of Ground Seven unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c). In order to obtain a COA, Petitioner must make a substantial showing of the denial of a constitutional right. § 2253(c)(2). Where a claim is dismissed on procedural grounds, the petitioner must demonstrate that reasonable jurists would debate both the court's procedural Ruling and whether the underlying claim has merit. *Slack v. McDaniel*, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). This court concludes that a COA should issue.

As to the procedural question of whether Petitioner is entitled to a hearing, the court finds that reasonable jurists might debate whether Petitioner was sufficiently diligent in pursuing a hearing in the state court. First, there is no Supreme Court or Third Circuit precedent which addresses the precise circumstances here. Second, Petitioner did request a PCRA hearing on May 23, 2006 when he presented Ground Seven to the state court and the state court declined to provide him a hearing. There is some basis to conclude that this constitutes the requisite level of diligence. *See Thomas v. Varner*, 428 F.3d at 498. However, PCRA counsel failed to request testimony from trial counsel and abandoned Ground Seven on appeal. Although this court believes that these acts constitute a lack of the requisite diligence, reasonable jurists might disagree. Hence, a COA could be granted on the procedural question of Petitioner's entitlement to a hearing on the merits of Ground Seven.

Since Petitioner has not been afforded an evidentiary hearing on the merits of Ground Seven, he has difficulty in making a substantial showing that his ineffective assistance claim has merit. In light of the presumption that trial counsel's performance was reasonable, *see Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, the fact that Ms. Baker was discovered in 2006 completely by chance, Ms. Baker's admission that at the time of the crime, she was reluctant to speak to the police about the crime, Affidavit of Kizzi Baker at 2, and the unlikelihood that trial counsel could have located Ms. Baker prior to trial[21]—had he searched for her—the court doubts

---

**20.** Moreover, Petitioner has not sought direct habeas relief based upon his actual innocence. *See supra* n. 12.

**21.** Petitioner was arrested in this case in December 1997. (N.T. 4/29/09 at 134). Trial counsel entered his appearance on February 27, 1998. Post–Hearing Response to Petition for Writ of Habeas Corpus, Exhibit A at 1. Ms. Baker testified that her grandmother died in April 2008. (N.T. 4/29/09 at 45). This is significant because Ms. Baker stated that it was her grandmother who would have ensured she cooperate in this case, if anyone had sought her cooperation. *Id.* at 44–45. Thus, once Ms. Baker's grandmother died, by Ms. Baker's own admission, her cooperation was much more uncertain. Given the brief time between trial counsel's entry of appearance and Ms. Baker's grandmother's death, it is unlikely that trial counsel would have been able to locate Ms. Baker and secure her cooperation.

that trial counsel's performance was unreasonable. Nonetheless, trial counsel has submitted an unsworn declaration wherein he states that: (1) he does not recall what investigation he conducted in Petitioner's case; (2) admits that Petitioner told him he was innocent and asked him to locate alibi witnesses; (3) he did not locate Ms. Baker; and (4) he believes that his failure to locate Ms. Baker, who lived less than a block away from the crime scene, was professionally unreasonable. Unsworn Declaration of Thomas W. Moore, Jr. at [2]-[3].[22] These statements certainly suggest that trial counsel's performance was professionally unreasonable. Had trial counsel submitted an affidavit containing these averments, this court could not reject them, without holding an evidentiary hearing. *See United States v. Mannino*, 212 F.3d 835, 843 & n. 7 (3d Cir.2000). Of course, he did not and, as explained above, the court believes it is barred from holding an evidentiary hearing concerning the merits of Ground Seven. In light of all these complications concerning part one of the *Strickland* test, the court believes that the issues presented herein are " 'adequate to deserve encouragement to proceed further.' " *Slack*, 529 U.S. at 484, 120 S.Ct. 1595 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Hence, a COA should issue with respect to the first part of the *Strickland test. Id.*

As to the prejudice component, the court believes that Ms. Baker's testimony, without the corroboration provided by Petitioner's and Mr. Gladden's testimony, does not establish prejudice. On her own, Ms. Baker can only state that, at the time she was looking in the direction of Mr. Howard's home on August 6, 1996, she did not see Petitioner enter or leave the home. Since she was not inside Mr. Howard's home at the relevant time and may have failed to observe other people enter and leave Mr. Howard's home prior to the shooting, she cannot alone definitively establish that Petitioner was not present at the shooting. Of course, that is not what prejudice requires. *See Strickland*, 466 U.S. at 693–94, 104 S.Ct. 2052 (requiring only a reasonable probability, which is less than a preponderance of the evidence, of a different outcome). Bearing this proper standard in mind, the court cannot ignore the fact that Ms. Laws was a crack addict[23] (N.T. 5/17/99 at 43–44, 113–14), and had consumed crack shortly before the shooting, *id.* at 158, or that her testimony was impeached throughout the trial for numerous inconsistencies, *id.* at 168–69 (inconsistency between what she told the police and what is in police reports concerning Mr. Gladden's height and build), *id.* at 189–90 (inconsistency between what she told Sergeant Maddela and what is in his report concerning whether she told Sergeant Maddela that the person who fired a gun into the ceiling of Mr. Howard's home also shot Mr. Howard), and errors. *Id.* at 88 (error in telling police that a shotgun had been fired in Mr. Howard's home), 97–98 (error in telling police that Omar and Denise both arrived home with Mr. Howard), 133 (error in telling police that Mr. Howard was shot in the stomach), 139–40 (error in telling police Petitioner, Mr. Lawson, and Mr. Gladden only sold drugs from Mr. Howard's house once prior to the shooting), In short, the Commonwealth's case was not a strong one and Ms. Baker's ability to cast doubt upon Ms. Laws' identification of Petitioner might have made a difference. *See Strickland*, 466 U.S. at

---

**22.** Mr. Moore's Unsworn Declaration is Exhibit C to the Supplemental Post–Hearing Submission of Terrance Lewis' Petition for Writ of Habeas Corpus.

**23.** Ms. Laws admitted that, at the time of the shooting, she had been using crack every day for approximately three years. (N.T. 5/17/99 at 114).

696, 104 S.Ct. 2052 (noting that the strength of the prosecution's case is relevant to the prejudice determination). In the court's view, reasonable jurists might find that Ms. Baker's testimony is enough to cause prejudice. Further, this issue is " 'adequate to deserve encouragement to proceed further.' " *Slack,* 529 U.S. at 484, 120 S.Ct. 1595 (quoting *Barefoot v. Estelle,* 463 U.S. at 893 & n. 4, 103 S.Ct. 3383). Hence, a COA should issue with respect to the second part of the *Strickland* test.

### C. Remaining Exhausted Claims– Grounds One Through Three

The Commonwealth does not dispute that grounds one through three are exhausted since their substance was raised in Petitioner's first PCRA petition and appeal. *See supra* 3 & n. 5. Any claims adjudicated by the state court must be considered under the standard of review established by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that this court cannot grant habeas relief on a claim unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to United States Supreme Court precedent if the state court

has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In determining whether a state court's decision was contrary to Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*). Instead, state court decisions should be "given the benefit of the doubt." *Id.* In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (*per curiam*). All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

If, however, the State court does correctly identify the governing United States Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams v. Taylor,* 529 U.S. at 406, 120 S.Ct. 1495. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407–08, 120 S.Ct. 1495. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409, 120 S.Ct. 1495. The habeas court may not grant relief simply because it believes the state court's adjudication of the petition-

er's claim was incorrect. *Id.* at 411, 120 S.Ct. 1495. Instead, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* When deciding whether a state court's application of Supreme Court precedent was unreasonable, it is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent. *See Marshall v. Hendricks,* 307 F.3d 36, 71 n. 24 (3d Cir.2002); *Moore v. Morton,* 255 F.3d 95, 104 n. 8 (3d Cir. 2001).

■ The Supreme Court, addressing the AEDPA's factual review provisions in *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340, 123 S.Ct. 1029. Yet, the habeas court can "disagree with a state court's credibility determination." *Id.; see also Wiggins v. Smith,* 539 U.S. 510, 528, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (rejecting state court's factual determination under § 2254(e)(1) and § 2254(d)(2)). If the state court's decision based on a factual determination is unrea-

sonable in light of the evidence presented in the state court proceeding, habeas relief is warranted under § 2254(d)(2).[24] *Lambert,* 387 F.3d at 235.

### 1. Ineffective Assistance Regarding the Failure to Subpoena Police Sergeant Maddela—Ground One

■ Petitioner maintains that direct appellate counsel[25] was ineffective for failing to argue that trial counsel had been ineffective for failing to subpoena Police Sergeant Maddela to testify for the defense.[26] Pet. at 9, 1 (reverse); Pet'r's Br. at 7–16. Petitioner maintains that, if called to testify, Sergeant Maddela would have confirmed that Ms. Laws had told him on the night of the shooting that: (1) there was only one gun involved, a shotgun; (2) the person with the shotgun fired once into the ceiling of the house; and (3) the same person later used the shotgun to fire the shot which killed the victim. Pet'r's Br. at 7–8. He believes Sergeant Maddela's testimony in this regard would have been so helpful to his defense that the failure to present it was prejudicial under *Strickland.* *Id.* at 8. The Commonwealth maintains that Sergeant Maddela's testimony was neither admissible nor helpful to the defense, Resp. at 13–20.

The Superior Court adjudicated this claim as follows. First, it found that, if

---

**24.** Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision, *Lambert,* 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court if he satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert,* 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned,

the remaining findings must still be weighed under the overarching standard of § 2254(d)(2). *Lambert,* 387 F.3d at 235–36.

**25.** Petitioner was represented by new counsel on direct appeal. Pet. at 10.

**26.** In order to evaluate the claim that direct appellate counsel was ineffective, the court can examine whether the claim appellate counsel omitted had merit *See Wright v. Vaughn,* 473 F.3d 85, 90 (3d Cir.2006). The court will take this approach with respect to Petitioner's claim and evaluate whether trial counsel was ineffective.

Sergeant Maddela had been able to testify that Ms. Laws had failed specifically to identify Petitioner in her statement, that omission was not an inconsistency under Pennsylvania evidentiary law. *See* Super. Ct. PCRA op. I at 6. Second, the court found that the only inconsistent statement Sergeant Maddela could have recounted was that the person who fired the shot into the ceiling was the same individual who shot the victim. *Id.* The court held that this minor discrepancy between Ms. Laws' trial testimony and what she had told Sergeant Maddela was not prejudicial.[27] *Id.* at 6–7.

Under habeas review, this court must accept the Superior Court's conclusion that Ms. Laws's omission does not qualify as an inconsistency under Pennsylvania evidentiary law. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (*per curiam*) (habeas court is bound by a state court determination of a state law question). For this reason, any effort to call Sergeant Maddela to testify concerning this omission would have been futile. The Supreme Court has never held that an attorney could be ineffective for failing to pursue a futile course; therefore, this aspect of the Superior Court's adjudication was not contrary to Supreme Court precedent. Further, the Third Circuit has held that an attorney is not ineffective for failing to pursue futile arguments. *See Parrish*, 150 F.3d at 328–29; *Moore v. Deputy Commrs. of SCI–Huntingdon*, 946 F.2d at 245. Therefore, this aspect of the Superior Court's adjudication was a reasonable application of Supreme Court precedent. *See Marshall*, 307 F.3d at 71 n. 24; *Moore v. Morton*, 255 F.3d at 104 n. 8.

The Superior Court found that the only inconsistent statement that Sergeant Maddela could recount was that the person who fired the shot into the ceiling was the same person who shot the victim and that this minor discrepancy was not prejudicial. This characterization of the inconsistency is factually inaccurate; Ms. Laws' statement to Sergeant Maddela differed from her trial testimony in two regards. First, Ms. Laws herself testified at trial that the shotgun was "racked," but *not* fired. (N.T. 5/17/99 at 69, 88, 116–18). Second, Ms. Laws testified that two weapons were used—one defendant (who she identified as Petitioner) had a shotgun, (N.T. 5/17/99 at 66–67). and another (co-defendant Lawson) had the nine millimeter handgun which was used to kill the victim. *Id.* at 66, 72. Further, there was no evidence that a shotgun was fired in the victim's home, (N.T. 5/19/99 at 34–35), and the medical examiner testified that the victim was killed by a single bullet, not shotgun projectiles. (N.T. 5/19/99 at 59–65). Thus, if Sergeant Maddela had testified concerning what Ms. Laws told him, the jury would have learned over the course of the trial that what she told Sergeant Maddela was quite inconsistent with her trial testimony and with what other witnesses had independently determined. However, the question is whether the additional doubt that could be cast on the accuracy of Ms. Laws' trial testimony raised the reasonable probability of an acquittal. Since the Superior Court did not appreciate the fullness of the harm to Ms. Laws's credibility that Sergeant Maddela could have provided, this court finds that the Superior Court did not actually analyze and adjudicate the claim, so that *de novo* review, not the deferential review provided by 28 U.S.C. § 2254(d), is appropriate. *Cf. Thomas v.*

---

**27.** In reaching this conclusion, the Superior Court used the formulation of a reasonable probability of the outcome being different as the definition of prejudice. Super. Ct. PCRA op. 1 at 6–7. This is consistent with the *Strickland* definition of prejudice. *See Strickland*, 466 U.S. at 695, 104 S.Ct. 2052.

*Horn,* 570 F.3d 105, 124 (3d Cir.2009) (noting that § 2254(d)'s deferential standard of review does not apply when the state court misunderstands the nature of the petitioner's federal claim and, thus, fails to resolve the claim on its merits).

Nonetheless, the court believes that Petitioner was not prejudiced by the additional inconsistencies Sergeant Maddela could have revealed. It is unlikely that the jury would have been swayed by Sergeant Maddela informing them that Ms. Laws had told him the shotgun was fired into the ceiling and then used to kill the victim because other evidence demonstrated that this was simply not true. That is, the jury would learn that Ms. Laws inaccurately stated that the shotgun was fired into the ceiling[28] and was used to kill the victim. (N.T. 5/19/99 at 59–65). Since the jury would learn that Ms. Laws's recollection of the criminal conduct was flawed in the precise manner that Sergeant Maddela could relate, his proposed testimony was merely cumulative and, hence, not prejudicial. *See Marshall,* 307 F.3d at 88 (finding no prejudice from trial counsel's failure to present evidence that, nonetheless, had been presented by co-defendant's counsel and by other witnesses); *cf. Lusick v. Palakovich,* 270 Fed.Appx. 108, 111 (3d Cir. 2008) (non precedential) (declining to fault trial counsel for failing to impeach a witness with a particular piece of evidence when the jury was already aware of the inconsistencies in that witness's testimony); *United States v. Smith,* 104 Fed. Appx. 266, 271 (3d Cir.2004) (non precedential) (finding that defense counsel were not ineffective for failing to present an additional witness to testify concerning evidence that had been presented to the jury through a different witness). Therefore, this claim lacks merit.

### 2. Ineffective Assistance Regarding the Failure to Call Detectives Kane and Hughes to Testify for the Defense—Ground Two

Petitioner maintains that direct appellate counsel was ineffective for failing to argue that trial counsel had been ineffective for failing to call Detectives Kane and Hughes to testify that Ms. Laws had not, in fact, given them an additional statement which was consistent with her trial testimony concerning how many times she had seen Petitioner prior to the day of the crime. Pet. at 9, 4–5 (reverse); Pet'r's Br. at 17–23. Ms. Laws's initial police statement only mentioned having seen Petitioner sell drugs from the victim's home once, Pet'r's Br. at 18; (N.T. 5/17/99 at 140, 141). Yet, at trial, she said she had seen Petitioner selling drugs from the victim's home on 50 prior occasions. Pet'r's Br. at 18; (N.T. 5/17/99 at 139). When confronted with this inconsistency at trial, Ms. Laws claimed that she had subsequently given Detectives Kane and Hughes an additional written statement, which corrected this error. Pet'r's Br. at 18; (N.T. 5/17/99 at 140, 143–47). Trial counsel. during a sidebar conference, was advised by the Commonwealth that Ms. Laws submitted no such subsequent statement; the trial court accepted that representation. Pet'r's Br. at 19; (N.T. 5/17/99 at 147–50).

Petitioner argues that trial counsel should have called Detectives Kane and Hughes so that they could testify that Ms. Laws did not, in fact, provide them with any statement wherein she said that Petitioner sold drugs from the victim's house on 50 prior occasions. Pet'r's Br. at 19–20. He believes that then testimony would have shown Ms. Laws barely knew Peti-

---

**28.** Indeed, on cross-examination by defendant Lawson's counsel, Ms. Laws admitted that she was mistaken when she told the police on the night of the murder that the shotgun had been fired into the ceiling. (N.T. 5/17/99 at 88).

tioner and, hence, was much less likely to have correctly identified him on the night of the murder. *Id.* at 20–21. The Commonwealth maintains that the testimony of Detectives Kane and Hughes would not have been particularly helpful since Ms. Laws admitted at trial that she had not given the additional statement. Resp. at 22. The basis for the Commonwealth's argument is that, on re-direct examination, Ms. Laws stated that the additional statement of correction to which she had referred during cross-examination was dated March 17, 1997 and the only correction she made was that the victim was not shot in the stomach. (N.T. 5/17/99 at 186–87). On re-cross examination by trial counsel, Ms. Laws conceded that the March 17, 1997 statement was the only correcting statement she had made. *Id.* at 188–89.

The Superior Court resolved Petitioner's claim by finding that, since Ms. Laws had not made the alleged statement of correction, trial counsel was not ineffective for failing to call Detectives Kane and Hughes to testify whether Ms. Laws had made the statement. *See* Super. Ct. PCRA op. I at 5. The Superior Court failed to mention that Petitioner did not want the detectives to testify concerning *whether* Ms. Laws had given the statement of correction but, instead, to *confirm that she had not.* As Petitioner notes, once the detectives confirmed this point, the jury would have had an additional basis to discount Ms. Laws's identification of Petitioner as a participant in the crime. Again, the Superior Court failed to appreciate the substance of Petitioner's claim and, in fact, deemed it insignificant. Thus, this court finds the Superior Court did not actually adjudicate Petitioner's claim and will review it *de novo*. *See Thomas,* 570 F.3d at 124.

In order to determine whether direct appellate counsel was ineffective, it is appropriate to, first, consider whether or not

trial counsel was ineffective. *See Wright v. Vaughn,* 473 F.3d 85, 90 (3d Cir.2006). The court concludes that Petitioner cannot show he suffered prejudice as a result of trial counsel's failure to call Detectives Kane and Hughes, hence, trial counsel was not ineffective.

If Ms. Laws had insisted at trial that she had given an additional statement in which she told the police that Petitioner had sold drugs from the victim's home on 50 prior occasions, then there would have been some value in calling Detectives Kane and Hughes to testify that, in fact, she had not. However, Ms. Laws admitted on re-direct and re-cross examination that the only supplemental statement she gave to police corrected her error concerning which part of the victim's body had been shot. (N.T. 5/17/98 at 186–87, 188–89). Thus, the testimony Petitioner faults trial counsel for omitting was merely cumulative and, hence, not prejudicial. *See Marshall,* 307 F.3d at 88 (finding no prejudice from trial counsel's failure to present evidence that, nonetheless, had been presented by co-defendant's counsel and other witnesses); *cf. Lusick,* 270 Fed.Appx. at 111 (declining to fault trial counsel for failing to impeach a witness with a particular piece of evidence when the jury was already aware of the inconsistencies in that witness's testimony); *United States v. Smith,* 104 Fed.Appx. at 271 (finding that defense counsel were not ineffective for failing to present an additional witness to testify concerning evidence that was presented to the jury through a different witness). Therefore, this claim does not meet *Strickland* standards and should be denied.

### 3. Ineffective Assistance Regarding the Failure to Seek Removal of a Sleeping Juror—Ground Three

Petitioner maintains that direct appellate counsel was ineffective for failing to argue that trial counsel had been inef-

fective for failing to seek removal of a juror who fell asleep during the trial. Pet. at 9, 6 (reverse); Pet'r's Br. at 23–28. Petitioner has submitted three affidavits, which were executed in November 2001, to support his claim that one or more jurors fell asleep during the trial. *See* Pet'r's Br. at Ex, D. Each affiant (one of whom is Petitioner) states that they brought this to the attention of trial counsel and asked him to have the court remove the sleeping juror.[29] *Id.* Petitioner now asserts that the sleeping juror was juror number eleven, Pet'r's Br. at 23, 26, who was taking medication at the time of trial.[30] *Id.* at 27. He maintains that the Superior Court unreasonably determined that his claim lacked merit. *Id.* at 26–28. The Commonwealth argues that Petitioner has not provided sufficient evidence to prove that any juror slept during his trial, hence, he cannot demonstrate that counsel were ineffective for failing to raise the issue. Resp. at 22–24.

The Superior Court resolved this claim by adopting the PGRA court's finding that Petitioner had failed to: (1) identify the juror who allegedly fell asleep, and (2) demonstrate any prejudice from the alleged lapse of attention. *See* Super. Ct. PCRA op. I at 4–5. The Superior Court went on to summarize its conclusion as follows: "Without pleading 'who' fell asleep, 'when' in the trial, this supposedly occurred, or 'what' that juror missed during trial, [Petitioner] has failed to satisfy his burden [to demonstrate prejudice]." *Id.* at 5.

The Superior Court resolved Petitioner's claim based on his failure to prove the factual basis for it. Since Petitioner's affidavits do not actually reveal which juror allegedly fell asleep during the trial, *see supra* n. 29, the state court's finding that he did not identify the juror is reasonable in light of the evidence that was presented to the state court; hence, Petitioner cannot be afforded relief under 28 U.S.C. § 2254(d)(2). In addition, this finding of fact must be presumed correct and Petitioner bears a heavy burden to rebut it. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not done so because the affidavits he submits fail to identify the juror who allegedly fell asleep and he provides no other evidence.[31] Since the presumption is not re-

---

29. The affiants are Petitioner, Barbara Waters (Petitioner's grandmother, *see* N.T. 5/19/99 at 91) and Anthony Williams ("Anthony"). Ms. Waters and Anthony both state that they saw "some of the jurors nodding in a state of unconsciousness during part of the trial," which implies that more than one juror slept during at least part of the trial. Yet, they both state that they asked trial counsel to remove "the sleeping juror," implying that only one juror slept during the trial. Petitioner states that one juror was "totally asleep along with the rest who [were] nodding during trial." He states that he asked trial counsel to have "the sleeping juror removed from the panel." Presumably he means the juror whom he alleges "was totally asleep" and not the others who were "nodding during trial."

30. Petitioner claims that he learned juror number eleven was taking medication during *voir dire.* Pet'r's Br at 27.

31. His present representation in his brief that the alleged sleeping juror was juror number eleven is not evidence since it was not presented in an affidavit. *See* Rule 7(b), Rules Governing Section 2254 Cases in the United States District Courts. Even if Petitioner had prepared an affidavit identifying the sleeping juror as juror number eleven, this would not be convincing because: (1) it is self-serving, and (2) there is no explanation for why this assertion was not contained in the November 2001 affidavit he submitted to the state court. The absence of some explanation for not including this assertion earlier leads the court to infer that it is a recent fabrication tailored to meet the deficiency identified by the state court.

butted, the court must conclude that Petitioner's claim lacks a foundation in fact. Even under *de novo* review, Petitioner cannot prevail on an unsupported ineffective assistance of counsel claim because he bears the burden of satisfying the two-part Strickland test. *See Strickland,* 466 U.S. at 687, 697, 104 S.Ct. 2052. Since Petitioner's claim fails under *de novo* review, it certainly fails under the deferential review required by 28 U.S.C. § 2254(d)(1). *See Weeks v. Angelone,* 528 U.S. 225, 237, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).

## III. CONCLUSION

Ground Six is non-cognizable and must be dismissed. Although Ground Seven is procedurally defaulted, the default could be excused. The court has concluded that, nonetheless, no relief can be granted on the claim and but that a certificate of appealability ("COA") should be issued for this claim. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The remaining substantive claims—Grounds One, Two and Three-lack merit. The court finds that Third Circuit precedent forecloses relief on Grounds One and Two, hence, a COA should not issue for those claims. Petitioner has not provided proper factual support for Ground Three, hence, a COA should not issue for that claim either. Accordingly, I make the following:

### RECOMMENDATION

AND NOW, this 30th day of March, 2010, for the reasons contained in the preceding report, it is hereby RECOMMENDED that all of Petitioner's claims be DISMISSED or DENIED, without any further evidentiary hearing. Petitioner has demonstrated that reasonable jurists could find this court's procedural ruling concerning Ground Seven debatable, and made a substantial showing that Ground Seven has merit; hence, a certificate of appealability should be issued for Ground

Seven. Petitioner has not made a substantial showing of the denial of his Constitutional rights concerning Grounds One, Two and Three; hence, there is no probable cause to issue a certificate of appealability for those claims.

It be so **ORDERED.**